**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Schmitz v. Natl. Collegiate Athletic Assn.,* **Slip Opinion No. 2018-Ohio-4391.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4391

SCHMITZ ET AL., APPELLEES, *v.* NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Schmitz v. Natl. Collegiate Athletic Assn.,* **Slip Opinion No. 2018-Ohio-4391.]**

*Statutes of limitations—Discovery rule—Discovery rule applies to plaintiffs-appellees' negligence, fraudulent-concealment, and constructive-fraud claims—Civ.R. 12(B)(6) does not warrant dismissal of appellees' claims because amended complaint does not conclusively show that they are time-barred—Appellees' fraudulent-concealment and constructive-fraud claims are subject to R.C. 2305.10(A)'s two-year statute of limitations—Court of appeals' judgment reversing dismissal of appellees' claims affirmed.*

(No. 2017-0098—Submitted April 11, 2018—Decided October 31, 2018.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 103525, 2016-Ohio-8041.

_____

**FRENCH, J.**

{¶ 1} Steven Schmitz sustained repetitive concussive and subconcussive brain impacts while playing college football for appellant University of Notre Dame du Lac ("Notre Dame") in the mid-1970s. In December 2012, Schmitz was diagnosed with chronic traumatic encephalopathy ("CTE"), a degenerative brain disease. By 2014, at age 58, he had been additionally diagnosed with severe memory loss, cognitive decline, Alzheimer's disease, and dementia, all of which he claimed were caused, aggravated, and/or magnified by the repetitive head impacts he sustained while playing football for Notre Dame. Schmitz died in February 2015.

{¶ 2} In October 2014, just months before his death, Schmitz and his wife, Yvette Schmitz, filed this action against Notre Dame and the other appellant, the National Collegiate Athletic Association ("NCAA"), alleging that appellants failed to notify, educate, and protect Schmitz from the long-term dangers of repeated concussive and subconcussive head impacts. Following Schmitz's death, his estate was substituted as a plaintiff in this action. Appellees are (1) the Estate of Steven T. Schmitz and (2) Yvette Schmitz, individually and as fiduciary of the Estate of Steven T. Schmitz.

{¶ 3} This appeal asks us to consider when appellees' claims for negligence, constructive fraud, and fraudulent concealment accrued and whether they are time-barred. Because the trial court dismissed those claims pursuant to Civ.R. 12(B)(6), we look only to the amended complaint to determine whether the allegations are legally sufficient to state each claim. *Loveland Edn. Assn. v. Loveland City School Dist. Bd. of Edn.*, 58 Ohio St.2d 31, 32, 387 N.E.2d 1374 (1979). In doing so, we presume that all factual allegations in the amended complaint are true and make all reasonable inferences in appellees' favor. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). After accepting appellees' factual allegations as true and making all reasonable inferences in favor of appellees, we

conclude that the amended complaint does not show conclusively that appellees' claims are time-barred; therefore, Civ.R. 12(B)(6) does not warrant their dismissal. Contrary to the Eighth District Court of Appeals' determination of which statute of limitations applies to appellees' fraud-related claims, however, we hold that those claims are subject to the same two-year statute of limitations as appellees' negligence claim.

*Factual allegations and procedural background*

{¶ 4} From 1974 through 1978, Schmitz played football for Notre Dame, a member institution of the NCAA—the governing body of collegiate athletics. Schmitz participated in full-contact tackling drills, practices, scrimmages, and games during his college football career, and he sustained "repetitive sub-concussive and concussive brain impacts." On "many occasions," he "experienced concussion symptoms, including but not limited to being substantially disoriented as to time and place." Yet, neither Schmitz nor Notre Dame's coaching staff recognized that Schmitz suffered from any injury that required monitoring, treatment, therapy or rest. Notre Dame's coaching staff praised tackling and blocking techniques that involved a player's use of his helmeted head and aggravated the risk of head injuries, and coaching staff ordered players to continue participating in practices and games following a head impact. Schmitz was neither tested nor examined for concussive symptoms, nor was he advised or educated about concussions while playing football for Notre Dame.

{¶ 5} Schmitz alleged that until December 2012, he did not know, and had no grounds to believe, that he had suffered a latent brain injury. Rather, he alleged that his December 2012 diagnosis of CTE at the Cleveland Clinic was the first time a "competent medical authority" informed him that he "had suffered a brain injury related to playing football." Schmitz described CTE as a "latent disease" that "involves the slow build-up of the Tau protein within the brain tissue that causes

diminished brain function, progressive cognitive decline," and other neurological symptoms.

**{¶ 6}** In October 2014, Schmitz and his wife filed this action against appellants; their amended complaint, filed in January 2015, alleged claims of negligence, fraudulent concealment, constructive fraud, breach of express and implied contract, and loss of consortium against appellants. The amended complaint alleges that appellants knew or should have known that college football players are at greater risk for chronic brain injury, both during their football careers and later in life, and that appellants "ignored the medical risks," acted so as to "aggravate[] and enhance[] the medical risks," "failed to educate" players about the links between football head impacts and chronic neurological damage, and "failed to implement or enforce any system that would reasonably have mitigated, prevented, or addressed concussive and sub-concussive impacts."

**{¶ 7}** Appellants filed motions to dismiss appellees' claims pursuant to Civ.R. 12(B)(6) as time-barred; the NCAA alternatively moved to dismiss appellees' claims for failure to state a claim upon which relief could be granted. The trial court granted the motions to dismiss without opinion, and appellees appealed.

**{¶ 8}** The Eighth District Court of Appeals affirmed in part and reversed in part the trial court's judgment and remanded the case to that court for further proceedings. It affirmed the dismissal of appellees' contract claims as time-barred and affirmed the dismissal of appellees' constructive-fraud claim against the NCAA for failure to state a claim upon which relief could be granted. As to the remaining claims, however, the court of appeals reversed the trial court's dismissal. It held that the amended complaint does not allege facts that would allow the court to conclude as a matter of law that appellees' remaining claims accrued prior to December 2012, when Schmitz was diagnosed with CTE. The court characterized the amended complaint as alleging a "latent injury" that "did not manifest until

decades after Schmitz stopped playing football." 2016-Ohio-8041, 67 N.E.3d 852, ¶ 25. The court stated, "[W]ithout more facts or evidence in the record, we cannot say as a matter of law that [appellees' remaining] claims are time-barred." *Id.* at ¶ 39.

{¶ 9} This court accepted appellants' discretionary appeal, which asserts two propositions of law:

> (1) A diagnosis for the long-term effects of an injury a plaintiff already knew about does not revive a time-barred claim.
>
> (2) Plaintiffs' fraudulent-concealment and constructive-fraud claims are subject to the R.C. 2305.10(A)'s [sic] two-year statute of limitations.

*See* 150 Ohio St.3d 1442, 2017-Ohio-7843, 82 N.E.3d 1175.

*Analysis*

**Standard of review**

{¶ 10} We review a dismissal pursuant to Civ.R. 12(B)(6) de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. We limit our review to the allegations in the amended complaint. *Loveland Edn. Assn.*, 58 Ohio St.2d at 32, 387 N.E.2d 1374. Before a court may dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶ 11} Application of a statute of limitations presents a mixed question of law and fact; when a cause of action accrues is a question of fact, but in the absence of a factual issue, application of the limitations period is a question of law. *Wells v. C.J. Mahan Constr. Co.*, 10th Dist. Franklin Nos. 05AP-180 and 05AP-183,

2006-Ohio-1831, ¶ 25, citing *Cyrus v. Henes*, 89 Ohio App.3d 172, 175, 623 N.E.2d 1256 (9th Dist.1993), *rev'd on other grounds*, 70 Ohio St.3d 640, 640 N.E.2d 810 (1994). A court may dismiss a complaint as untimely under Civ.R. 12(B)(6) only when, after accepting the factual allegations as true and making all reasonable inferences in favor of the plaintiff, the complaint shows conclusively on its face that the action is time-barred. *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 11; *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379, 433 N.E.2d 147 (1982).

**Statute of limitations for bodily-injury claims and the discovery rule**

{¶ 12} Appellees' remaining claims—including, as we discuss later, their fraudulent-concealment and constructive-fraud claims—are subject to the limitations period contained in R.C. 2305.10(A), which states, "[A]n action for bodily injury * * * shall be brought within two years after the cause of action accrues." The dispositive question, then, becomes when appellees' causes of action accrued. If, as appellants contend, the claims accrued by 1978 when Schmitz concluded his college football career, then the claims were time-barred long before 2014, when the Schmitzes filed this action. But if, as appellees contend, the claims accrued when Schmitz was diagnosed with CTE in December 2012, then the Schmitzes timely filed their claims within two years.

{¶ 13} Subject to certain exceptions not applicable here, a cause of action for bodily injury accrues and the limitations period begins to run "when the injury * * * occurs." R.C. 2305.10(A). Prior to the General Assembly's enactment of statutory language to define when a cause of action accrues, this court held that a cause of action for bodily injury existed "from the time the wrongful act was committed." *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 87, 447 N.E.2d 727 (1983). Often the wrongful act and injury occur simultaneously. But other times, a tortious act may not result in immediate or immediately apparent injury.

{¶ 14} In *O'Stricker*, this court recognized that application of the general rule could mean that the statute of limitations bars an injured party's right to recovery before he is even aware that it exists. *Id.* To alleviate that concern, the court formulated a discovery rule to postpone the accrual of a cause of action for the infliction of bodily injury that does not manifest itself until a point subsequent to the defendant's alleged misconduct. *Id.* at 90. With respect to a latent injury, a claim accrues under the discovery rule on either "the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first." *Id.* Accrual of a cause of action for bodily injury requires that the plaintiff "knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of the defendant." *Id.* at paragraph two of the syllabus; *accord Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, ¶ 10. Essentially, the statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable diligence, should know that he has suffered a cognizable injury.

**Application of the discovery rule in latent-disease cases**

{¶ 15} In *O'Stricker*, this court applied the discovery rule to a case that involved a "latent disease"—cancer that allegedly developed as a result of the plaintiff's exposure to asbestos. *Id.* at 89. The court noted that asbestos exposure may cause disease many years after inhalation of the fibers and held that the plaintiff's cause of action did not arise at the time of his asbestos exposure because the injury for which he sought recovery—the cancer—did "not manifest itself immediately," *id.* at 90. After considering the rationales for statutes of limitations generally, the court concluded that a liberal interpretation of accrual is appropriate in actions that allege bodily injury that manifests itself only at a later point.

{¶ 16} This court extended and applied the *O'Stricker* discovery rule in a case in which the plaintiff claimed to have developed cancer years after his exposure to toxic chlorine gas. *Liddell v. SCA Servs. of Ohio, Inc.*, 70 Ohio St.3d 6, 635 N.E.2d 1233 (1994). Unlike the asbestos exposure in *O'Stricker*, the exposure to the toxic gas in *Liddell* caused immediate physical symptoms, including throat and eye irritation, for which Liddell received medical treatment and workers' compensation benefits. Liddell subsequently experienced frequent sinus infections and underwent the removal of a benign papilloma from his left nasal cavity. More than six years after Liddell's exposure, a biopsy revealed cancer in Liddell's nasal cavity, and Liddell's physician advised him that the cancer might be related to his exposure to the toxic gas. Liddell filed a negligence action within two years of his cancer diagnosis.

{¶ 17} The defendant in *Liddell*, like appellants here, argued against application of the discovery rule because Liddell was aware of physical injury at the time of his exposure to the toxic gas. The defendant argued that when a plaintiff is visibly injured from a traumatic event, "any cause of action, whether regarding an immediately apparent injury or a later manifestation of cancer, arises at the time of the traumatic event." *Id.* at 8. But this court rejected that argument.

{¶ 18} Despite Liddell's experience of physical symptoms upon his exposure to the toxic gas, and intervening medical issues involving his sinuses and nasal cavity, the court focused on Liddell's cancer, which it characterized as "a latent injury," *id.* at 10. We stated, "Liddell could not, and did not, discover his injury, the cancer," within two years of the toxic exposure, and we recognized that an earlier claim for damages for cancer would have been too speculative. *Id.* at 13. "[T]he procedural dilemma confronting a plaintiff in cases where a long latency conflicts with a short statute of limitations provides the plaintiff with only an illusory opportunity to litigate his or her claim." *Id.* We therefore held that

Liddell's cause of action accrued on the date that a competent medical authority informed him that his cancer might be linked to his exposure. *Id.*

## Extent of injury

**{¶ 19}** Appellants contend that appellees' reliance on *Liddell* is misplaced because this case does not involve a latent injury or disease. Rather, relying on a single reference in the amended complaint to Schmitz's neurological impairments as "the latent effects of neuro-cognitive and neuro-behavioral injuries he sustained while playing football," appellants maintain that this case involves only the latent effects of a known injury. And they argue that Schmitz's claims accrued, and the limitations period began to run, when Schmitz experienced those injuries, even if he was unaware of the extent of the injuries.

**{¶ 20}** Appellants rely on *Pingue v. Pingue*, 5th Dist. Delaware No. 03-CA-E-12070, 2004-Ohio-4173, as support for their argument that the manifestation of latent effects of a known injury does not extend or toll the statute of limitations. In *Pingue*, the plaintiff sued his father in 2003 for assault and infliction of emotional distress, based on 28 years of alleged physical abuse that ended in 1990. The plaintiff filed suit within one year after his neurologist informed him that he had suffered irreversible brain injury, suffered from posttraumatic stress disorder, and faced a greater risk of contracting Parkinson's and Alzheimer's diseases, all as a result of the abuse. The Fifth District Court of Appeals held that the plaintiff's claims accrued in 1990, when he knew that his father's conduct had injured him, *id.* at ¶ 19, 23, and it affirmed the dismissal of the plaintiff's claims as time-barred. It characterized the knowledge the plaintiff obtained in 2002 as relating to "the extent of his injuries," *id.* at ¶ 19, not their existence or cause. *See also Grooms v. Grooms*, 10th Dist. Franklin No. 84AP-773, 1985 WL 9879, *2 (Feb. 26, 1985) (claims accrued on the date of the alleged assault, when the plaintiff discovered that she had sustained a physical injury as a direct result of the defendant's conduct, even though she may not have known the extent of her injuries).

**{¶ 21}** Unlike *Pingue* and *Grooms*, this is not a straightforward assault case, in which the impact itself alerts the victim to the existence of a legal claim. Discovery of physical injury alone is insufficient to start the statute of limitations running if at that time there is no indication of tortious conduct giving rise to a legal claim. *Norgard*, 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, at ¶ 10. In this regard, *Browning v. Burt*, 66 Ohio St.3d 544, 613 N.E.2d 993 (1993), is instructive. *Browning* involved claims of medical malpractice as well as claims against a hospital for negligent credentialing of the plaintiff's doctors. Even though the claims arose from the same physical injuries, the plaintiff's knowledge of facts that might trigger the limitations period for the medical-malpractice claims did not necessarily also trigger the limitations period for the negligent-credentialing claims. *Id.* at 560. The negligent-credentialing claims arose only when the plaintiff discovered or, with reasonable diligence, should have discovered information that would warrant investigation into the hospital's credentialing practices.

**{¶ 22}** This is consistent with our holding, in the context of a medical-malpractice claim, that a plaintiff need not "be aware of the *full* extent of [his] injury" to trigger the statute of limitations (emphasis sic), *Allenius v. Thomas*, 42 Ohio St.3d 131, 133, 538 N.E.2d 93 (1989). "It is enough that some noteworthy event, the 'cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." (Footnote omitted.) *Id.* at 134. If a patient believes, based on a known injury, that her treating medical professional has done something wrong, that belief is sufficient to alert the patient to the need to investigate and pursue a remedy. *Id.*

**Application of the discovery rule to appellees' remaining claims**

**{¶ 23}** To justify dismissal of this action as untimely under Civ.R. 12(B)(6), the amended complaint must show conclusively on its face that appellees' remaining claims are time-barred. *Velotta*, 69 Ohio St.2d at 379, 433 N.E.2d 147.

As to claims that are subject to R.C. 2305.10(A), the amended complaint must conclusively show that the claims accrued before October 20, 2012, two years before Schmitz and his wife commenced this action. The amended complaint does not make that conclusive showing.

{¶ 24} As an initial matter, we note that the amended complaint alleges that Schmitz repeatedly "experienced concussive symptoms, including but not limited to being substantially disoriented as to time and place," during drills, practices, and games. Schmitz's experience of disorientation as to time and place following head impacts establishes that he was, or at least should have been, aware that he had sustained head injuries. But head injuries, including concussions, are an inherent part of football. MacGillivray, *Where Is the Awareness in Concussion Awareness: Can Concussed Players Really Assume the Risk in a Concussed State?*, 21 Jeffrey S. Moorad Sports L.J. 529, 566 (2014). They do not inherently suggest the existence of actionable wrongdoing.

{¶ 25} Nor does the allegation of concussive symptoms establish that appellees' remaining claims accrued when Schmitz experienced those symptoms. To explain why, we turn to *Liddell*, 70 Ohio St.3d 6, 635 N.E.2d 1233.

{¶ 26} The plaintiff in *Liddell* suffered adverse health effects that required medical treatment immediately upon inhaling toxic gas. Subsequently, the plaintiff suffered repeated sinus infections and underwent the removal of a benign papilloma from his left nasal cavity, but neither the plaintiff nor his doctors connected those medical problems with his exposure to the toxic gas. The plaintiff's cause of action did not accrue until more than six years after the exposure to toxic gas, when his doctor discovered cancer in the plaintiff's nasal cavity and informed him that the cancer might be linked to the toxic exposure. *Id.* at 13. To determine when the cause of action accrued, this court focused on the plaintiff's cancer, which did not manifest until more than six years after the toxic exposure.

**{¶ 27}** Here, Schmitz sought recovery for severe memory loss, cognitive decline, Alzheimer's disease, CTE, and dementia. The amended complaint contains no allegations that any of those neurological impairments manifested prior to December 2012. But even if Schmitz experienced some neurological impairment prior to his CTE diagnosis in December 2012, the amended complaint alleges that prior to that diagnosis, Schmitz did not know and had no reason to know that he had suffered a latent brain injury while playing football.

**{¶ 28}** The amended complaint notes the existence of published medical literature dating back to 1928 suggesting a link between repetitive head blows and short- and long-term neurocognitive impairments, but the amended complaint also alleges that the medical literature "was not readily available to" Schmitz, who was unaware of the risks associated with head impacts. Beyond the allegations that Schmitz lacked knowledge of the medical literature or the links between head impacts and neurological impairments, the amended complaint alleges that Notre Dame coaching staff downplayed the seriousness of head impacts to the point that Schmitz never recognized that he had sustained an injury that required monitoring, treatment, rest or therapy. It alleges that Schmitz "did not know and had no grounds to believe that he had suffered a latent injury caused by playing football" until his CTE diagnosis in 2012. For purposes of Civ.R. 12(B)(6), we must accept those factual allegations as true. And doing so, we cannot conclusively say that appellees' claims accrued by the time Schmitz finished playing football for Notre Dame in 1978.

**{¶ 29}** Appellants alternatively argue that appellees' remaining claims are time-barred because, in the exercise of reasonable diligence, Schmitz should have known of his claims against appellants by October 2012, two years before he and his wife filed this action. They argue that the amended complaint creates "an unmistakable inference" that Schmitz exhibited cognitive and neurological symptoms that should have reasonably alerted him prior to his December 2012

diagnosis that he was suffering from an injury, quoting the amended complaint's allegation that CTE " 'involves the *slow* build-up of the Tau protein within the brain tissue that causes * * * *progressive* cognitive decline.' " (Emphasis added in brief.)

{¶ 30} Ultimately, it may be true—as appellants argue—that appellees' claims accrued before October 2012. But while appellants might be able to prove with facts uncovered during discovery that Schmitz knew or, with reasonable diligence, should have known prior to October 2012 of his neurological impairments and their connection to appellants' alleged conduct, that conclusion does not follow solely from the allegations made in the amended complaint. The amended complaint does not allege whether Schmitz suffered symptoms of neurological impairment between the end of his college football career and his diagnosis with CTE in 2012 or, if so, when those symptoms appeared. And neither the allegation that CTE involves progressive cognitive decline nor the allegation that Schmitz suffered symptoms prior to filing his complaint (almost two years *after* his diagnosis) conclusively demonstrates that Schmitz should have been aware prior to October 2012 that he had been injured as a result of appellants' conduct. The determination of those factual questions will require discovery.

{¶ 31} Appellants also argue that Schmitz should have known of his injuries by April 2010, when the NCAA changed its concussion-treatment protocols. The amended complaint acknowledges the new NCAA rules, which require member institutions to have a concussion-management plan requiring that a student-athlete who exhibits signs, symptoms or behaviors consistent with a concussion be removed from practice or competition and evaluated by a healthcare provider with experience in the evaluation and management of concussions. The amended complaint does not, however, allege when Schmitz became aware of the 2010 changes to the protocols, nor does it establish that knowledge of those changes would have reasonably alerted Schmitz that the head injuries he sustained while playing college football created a risk of long-term cognitive defects. We agree

with the Eighth District that "without more facts or evidence in the record, we cannot say as a matter of law that [appellees' remaining] claims are time-barred," 2016-Ohio-8041, 67 N.E.3d 852, at ¶ 39.

**Two-year limitations period applies to appellees' fraud-related claims**

{¶ 32} Appellants' second proposition of law takes issue with the Eighth District's holding that appellees' claims of fraudulent concealment and constructive fraud are subject to the four-year limitations period for fraud claims contained in R.C. 2305.09(C), not the two-year limitations period contained in R.C. 2305.10(A). We hold that appellees' fraud-related claims are subject to the two-year limitations period contained in R.C. 2305.10(A).

{¶ 33} The Eighth District recognized the general principle that the two-year statute of limitations for bodily-injury claims governs any action, however denominated, with the real purpose of recovering for personal injury. *See Andrianos v. Community Traction Co.*, 155 Ohio St. 47, 97 N.E.2d 549 (1951), paragraph two of the syllabus. But it found that principle inapplicable here: "While Ohio courts have recognized that a plaintiff cannot couch a claim for bodily injury as a fraud claim simply as a means to extend the statute of limitations, this is not the case here" because appellees' fraudulent-concealment and constructive-fraud claims are "separate and distinct" from appellees' other claims. 2016-Ohio-8041, 67 N.E.3d 852, at ¶ 40.

{¶ 34} In support of that conclusion, the court of appeals relied on *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 56, 514 N.E.2d 709 (1987). The plaintiff in *Gaines* sued a healthcare facility for medical malpractice for failing during a medical procedure to remove her intrauterine device ("IUD"); the plaintiff discovered that failure nearly three and a half years after the procedure. The plaintiff also sued the healthcare facility for fraud, based on its employees' representations that the IUD had been removed. This court held that the fraud claim

14

was separate and distinct from the medical-malpractice claim because the alleged acts of misconduct underlying the two claims were different. *Id.*

{¶ 35} We can easily distinguish the claims at issue in *Gaines* from the claims at issue here. Unlike in *Gaines*, the alleged conduct underlying appellees' fraudulent-concealment and constructive-fraud claims cannot be separated from the virtually identical alleged conduct underlying appellees' negligence claim. Each claim essentially alleges that appellants failed to satisfy a duty to inform Schmitz about the risks of playing college football and to share material information about those risks. And all of appellees' claims seek recovery for the "neurological and cognitive damage" that resulted in Schmitz's full disability. On these grounds, we hold that appellees' fraudulent-concealment and constructive-fraud claims—the essential character of which are to collect damages for Schmitz's bodily injury—are subject to the two-year statute of limitations contained in R.C. 2305.10(A).

*Conclusion*

{¶ 36} For these reasons, we affirm the Eighth District's judgment reversing the dismissal of appellees' claims for negligence, fraudulent concealment, and constructive fraud. The discovery rule applies to those claims, and after accepting the amended complaint's factual allegations as true and making all reasonable inferences in favor of appellees, we conclude that the amended complaint does not conclusively show that those claims are time-barred. Civ.R. 12(B)(6) therefore does not warrant the dismissal of those claims. Although we affirm the Eighth District's judgment, we disagree with the Eighth District's holding regarding the statute of limitations that applies to appellees' claims of fraudulent concealment and constructive fraud. Those claims, like appellees' negligence claim, are subject to the two-year statute of limitations contained in R.C. 2305.10(A).

Judgment affirmed.

O'CONNOR, C.J., and DEWINE and DEGENARO, JJ., concur.

FISCHER, J., concurs in judgment only.

KENNEDY, J., concurs in part and concurs in judgment only in part, with an opinion joined by O'DONNELL, J.

_____

**KENNEDY, J., concurring in part and concurring in judgment only in part.**

{¶ 37} Too much, too soon. There is simply too much yet to learn about Steven Schmitz's injuries, their causes, and when he first learned of those injuries and what may have caused them to make a definitive judgment at this stage of the litigation that the "discovery rule" applies to Schmitz's claims for negligence, fraudulent concealment, and constructive fraud. *See* majority opinion at ¶ 36. All that we need say—and all that we should say—is that the discovery rule could conceivably apply given the allegations made in the amended complaint.

{¶ 38} I agree with the majority's analysis and conclusion with respect to the second proposition of law of appellants, University of Notre Dame du Lac and the National Collegiate Athletic Association. I part ways with the majority as to its resolution of appellants' first proposition of law. We need not determine whether the discovery rule applies in this matter to decide whether to adopt that narrow proposition of law. Therefore, I would affirm the court of appeals' judgment, albeit on different grounds, and would remand the matter to the trial court for further proceedings.

{¶ 39} Appellants assert as their first proposition of law, "A diagnosis for the long-term effects of an injury a plaintiff already knew about does not revive a time-barred claim." This is an accurate statement of the established rule of law in Ohio. *See Allenius v. Thomas*, 42 Ohio St.3d 131, 133-134, 538 N.E.2d 93 (1989). However, adopting this proposition of law does not resolve the dispute before us.

{¶ 40} Appellants seek dismissal of the amended complaint filed by appellees, Estate of Steven T. Schmitz and Yvette Schmitz, individually and as

fiduciary of the Estate of Steven T. Schmitz, pursuant to Civ.R. 12(B)(6). Specifically, appellants assert that appellees' amended complaint is time barred pursuant to R.C. 2305.10(A), which states, "[A]n action for bodily injury * * * shall be brought within two years after the cause of action accrues."

{¶ 41} Appellants' assertion that the action is barred by the statute of limitations is an affirmative defense. Civ.R. 8(C). Ohio's appellate courts have long recognized the difficulty of successfully asserting an affirmative defense in a Civ.R. 12(B)(6) motion to dismiss. "Because affirmative defenses typically rely on matters outside the complaint, they normally cannot be raised successfully in a Civ.R. 12(B)(6) motion." *Main v. Lima*, 3d Allen No. 1-14-42, 2015-Ohio-2572, ¶ 14 (lead opinion); *see also Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 11AP-183, 2012-Ohio-1962, ¶ 6-7 ("the better procedure is to address affirmative defenses by way of a motion for summary judgment that will allow introduction of additional facts beyond the complaint").

{¶ 42} Raising the statute of limitations in a Civ.R. 12(B)(6) motion to dismiss "serves merely as a method for expeditiously raising the statute of limitations defense." *Mills v. Whitehouse Trucking Co.*, 40 Ohio St.2d 55, 58, 320 N.E.2d 668 (1974). A court may dismiss a complaint under Civ.R. 12(B)(6) as untimely only when, after accepting the material allegations as true and making all reasonable inferences in favor of the plaintiff, the complaint shows conclusively on its face that the action is time barred. *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 11; *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379, 433 N.E.2d 147 (1982).

{¶ 43} On the face of the amended complaint, appellees have asserted latent injuries and the latent effects of injuries sustained approximately 40 years ago. The amended complaint contains no allegations that compel the conclusion that Schmitz knew, or should have known, more than two years before he commenced this action that appellants were responsible for his alleged injuries. Therefore, based on the

face of the amended complaint, there is no way to conclusively determine that appellees' claims are barred by the statute of limitations, and dismissal pursuant to Civ.R. 12(b)(6) is therefore not appropriate. Appellees were not done in by their own pleadings. *See Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir.2006), fn. 1 ("dismissal under [Fed.R.Civ.P.] 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense"). This is the extent of the analysis that needs to be conducted.

**{¶ 44}** Therefore, because appellees' amended complaint does not show unequivocally on its face that the cause of action is barred by the statute of limitations, I would affirm the court of appeals' judgment on different grounds and would remand the matter to the trial court for further proceedings. I concur in judgment only as to the first proposition of law, and I join the majority opinion as to the second proposition of law.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Barkan Meizlish Handelman Goodin DeRose Wentz, L.L.P., Sanford A. Meizlish, and Robert E. DeRose; Locks Law Firm, David D. Langfitt, and Melanie J. Garner; and Hausfeld, L.L.C., and Richard S. Lewis, for appellees.

Squire Patton Boggs, L.L.P., Frederick R. Nance, Steven A. Friedman, and Sean L. McGrane, for appellant National Collegiate Athletic Association.

Jones Day, Matthew A. Kairis, Yvette McGee Brown, Aaron Michael Healey, Benjamin M. Flowers, and M. Ryan Harmanis, for appellant University of Notre Dame du Lac.

Rourke & Blumenthal, L.L.P., and Jonathan R. Stoudt, urging affirmance for amicus curiae Ohio Association for Justice.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Noorjahan Rahman, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

January Term, 2018

_____