[Cite as *Allan v. Allan*, 2022-Ohio-1488.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| RAIDA ALLAN, | : | |
| Plaintiff-Appellant, | : | |
| | : | Nos. 110177 and 110179 |
| v. | : | |
| TAREQ ALLAN, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 5, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-18-907570 and CV-19-922868

### *Appearances:*

RaslanPla & Company, LLC, Jorge Luis Pla, Nadia R. Zaiem, and Erika Molnar, *for appellants* Raida Allan and Tallan, LLC.

Dinn Hochman & Potter, LLC, and Edgar H. Boles, *for appellees* Qais Allan, 871 Rocky River Drive, Inc., and Pearl Road, Inc.

Blum & Associates Co., L.P.A., and Monica E. Russell, for *appellee* 871 Rocky River Drive, Inc.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant Raida Allan contests the grant of summary judgment in favor of appellees Qais Allan, 871 Rocky River Drive, Inc. ("871 Rocky River Dr."), and Pearl Road, Inc. ("Pearl Road") in a suit brought under Ohio's Fraudulent Transfer Act and the grant of summary judgment in favor of 871 Rocky River Dr., in a declaratory judgment action. Because we find that issues of material fact exist in both the Fraudulent Transfer Act suit and the declaratory judgment action, we reverse the judgments of the trial court and remand these cases for further proceedings.

## I. STATEMENT OF THE CASE AND FACTS

### A. The parties, property, and divorce proceedings

{¶ 2} Raida Allan and Tareq Allan were married in October 2002. During the marriage, Tareq acquired Pearl Road, a gas station business located in Middleburg Heights, Ohio from Raida.[1] In 2004, Tareq purchased 871 Rocky River Dr., a gas station business located in Berea, Ohio. In that same year, Tallan, LLC,

---

[1] For ease of reference, individual parties will be referred to by their first names and we refer to the business entities as follows:

| Pearl Road, Inc. | "Pearl Road" | The gas station in Middleburg Heights, Ohio |
| --- | --- | --- |
| 871 Rocky River Drive, Inc. | "871 Rocky River Dr." | The gas station business located in Berea, Ohio |
| Tallan, LLC | Tareq was the original member; divorce decree granted Raida sole membership interest | Owns the real property 871 Rocky River Dr. is located upon; divorce decree awarded this property to Raida |

whose sole member was Tareq, acquired the real property upon which 871 Rocky River Dr. was located.

{¶ 3} In 2010, Raida filed for divorce. Raida dismissed the divorce complaint on April 14, 2011. In 2015, Tareq filed for divorce. That case was resolved after trial with the entry of divorce being journalized on April 20, 2018. The divorce proceedings were the subject of litigation in this court in *Allan v. Palos*, 8th Dist. Cuyahoga No. 103815, 2016-Ohio-3073; *Allan v. Allan*, 8th Dist. Cuyahoga No. 107142, 2019-Ohio-2111; and *T. A. v. R. A.*, 8th Dist. Cuyahoga No. 107166, 2019-Ohio-3179.

{¶ 4} Around the time that Raida filed an action for divorce, Tareq attempted to transfer his interests in 871 Rocky River Dr. and Pearl Road to his brother Qais. At the divorce trial, Tareq testified that he sold 871 Rocky River Dr., the gas station business, to Qais in two transactions, first selling 49 percent in October 2010 and then selling the rest on September 14, 2012. *Allan*, 2019-Ohio-2111, ¶ 26-27. In addition to the sale of the business, Tareq testified that in November 2014, he borrowed $188,088 from Qais to pay the balance due on a loan from Charter One Bank for his purchase of Rocky River Dr. *Id*. at ¶ 48.

{¶ 5} As to Pearl Road, Tareq testified that he decided to sell the business to Qais on November 22, 2013. *Id*. at ¶ 40. The purchase agreement for the sale as provided in the record is first dated November 22, 2013, with a revised agreement executed on September 12, 2014. On February 4, 2015, two weeks before Tareq filed for divorce, mortgages in favor of Qais for the $188,088 loan noted above were

placed on the real estate that 871 Rocky River Dr. is located on as well as the marital home. *Id.*

{¶ 6} In answering Tareq's divorce complaint, Raida filed counterclaims and joined Tareq's brother, Qais, as well as the businesses 871 Rocky River Dr. and Pearl Road, alleging that the business transfers from Tareq to Qais were the subject of fraud. After Qais and the businesses were joined in the divorce proceedings and their motion to dismiss Raida's counterclaims was denied, Qais filed a writ of prohibition in this court arguing that the domestic relations court did not have jurisdiction over him. *Palos*, 2016-Ohio-3073. In dismissing the writ, we found that the domestic relations court had subject-matter jurisdiction to "determine what constitutes marital property versus separate property and divide the marital and separate property equitably between the husband and wife." *Id.* at ¶ 11.

{¶ 7} Before the divorce case was tried, the domestic relations court dismissed Raida's claims against Qais and the gas station businesses as well as Qais's counterclaims against Raida and Tareq. *Allan,* 2019-Ohio-2111, ¶ 5. However, Qais and the businesses remained as parties in the divorce as stakeholders of property. *Id.*

{¶ 8} After trial, the domestic relations court determined that the gas station businesses, including the real estate 871 Rocky River Dr. operated on, were to be considered marital property. *Id.* at ¶ 52–53. In the appeal of the divorce, we noted that the domestic relations court found "that the gas stations were marital property for purposes of its distributive award because it found that husband had

committed financial misconduct in attempting to divest himself of any property so that he did not have to share any of it with wife — despite the fact that it was wife who originally owned the first gas station and despite the fact that wife had transferred title of that first gas station to him for mere pennies compared to what she paid for it." *Id*. at ¶ 79. As to the transfer of the gas stations, the domestic relations court determined within the divorce decree that under R.C. 3105.171(F):

> (2) Assets and liabilities of the spouses: The parties had two businesses when the first divorce was filed. By the second divorce filing, [Tareq] had divested himself on paper of the two businesses, and mortgaged both the marital home and the only remaining business asset, the real property owned by Tallan, LLC at 871 Rocky River Drive for the same $181,088 alleged to be owed to Qais.

{¶ 9} The domestic relations court found that "[Tareq] has engaged in financial misconduct in that he transferred the two gas station businesses with convenience stores and the liquor licenses to his brother to avoid an equitable division of property." Regarding Raida's and Tareq's relative earnings ability, it found that there were "examples of Tareq's expenses being paid by Qais or one of the gas-station accounts that gave credence to Raida's claim that Tareq has willfully attempted to hide assets and income."

{¶ 10} In addition to dividing the marital property, the divorce judgment ordered Tareq to pay Raida almost $550,000 in spousal support, child support, temporary support arrearages, and attorney fees. The judgment further awarded title to the real estate 871 Rocky River Dr. operates on and the marital home to

Raida. The judgment also ordered Qais to extinguish the mortgages he held on the real property at 871 Rocky River Dr. and the marital home.

## B. The Fraudulent Transfer Act lawsuit

### 1. The complaint

{¶ 11} On November 28, 2018, Raida filed suit against Tareq, Qais, 871 Rocky River Dr. and Pearl Road alleging that the transfer of the businesses from Tareq to Qais, his brother, were fraudulent and sought recission of the transfers in an effort to collect on the judgment Raida obtained against Tareq through the divorce decree. Tareq never entered an appearance in the lawsuit.

{¶ 12} In an amended complaint, Raida alleged that the transfers of the gas station businesses from Tareq to Qais were not supported by consideration, the sales of 871 Rocky River Dr. and Pearl Road were not completed under Ohio law, Tareq had withdrawn money from the business accounts after the purported transfer occurred, Tareq's personal expenses were being paid from the business account through April 2015, and the business continued to pay Tareq's expenses through October 2016.

{¶ 13} In the first and second counts of the amended complaint under Ohio's Fraudulent Transfer Act, Raida alleged that the transfer of 871 Rocky River Dr. and Pearl Road should be considered as occurring immediately before the filing of the lawsuit as a presumed date of transfer for the purpose of the statute of limitations pursuant to R.C. 1336.02(A)(2)(a). Raida argued that this statute applies because the transfer of the businesses from Tareq to Qais were 1) not perfected under Ohio

law and 2) there was no consideration for the transfer of the businesses. In the third count of the amended complaint, Raida sought punitive damages. In her prayer, in addition to other requested relief, Raida specifically sought a receiver to take control of the gas station businesses and Qais's and Tareq's assets, avoidance of the purported transfers of 871 Rocky River Dr. and Pearl Road to the extent necessary to satisfy the judgment entered in the divorce decree, garnishment of the gas station businesses, an injunction against further disposition of the gas station businesses, and compensatory and punitive damages.

### 2. Dispositive Motions

{¶ 14} Appellees filed a motion for summary judgment arguing that 1) the statute of limitations barred the filing of the lawsuit, 2) the claims made in the amended complaint were barred by the doctrine of issue preclusion, 3) the claims made in the amended complaint were barred by the doctrine of collateral estoppel, and 4) the claims made in the amended complaint were barred by the doctrine of res judicata. Raida sought default judgment against Tareq.

### C. The Declaratory Judgment Action

{¶ 15} On October 8, 2019, 871 Rocky River Dr. filed a complaint for declaratory judgment seeking the trial court's determination that the underground storage tanks, canopy, signs, fixtures, furnishings and equipment, and gas pumps located at 871 Rocky River Dr., Berea, Ohio were assets of the business. The complaint was supported by a bill of sale as well as state regulatory filings that showed a history of registration of the underground storage tanks by 871 Rocky

River Dr., Tareq, or Qais. This action was consolidated with the Fraudulent Transfer Act case.

{¶ 16} In seeking summary judgment, 871 Rocky River Dr. argued that it owned the underground storage tanks, canopy, signs, fixtures, furnishings and equipment, and gas pumps located at 871 Rocky River Dr., Berea, Ohio prior to any transfer of the business from Tareq to Qais and, as such, there was no issue that 871 Rocky River Dr. was the owner of those assets.

{¶ 17} In opposition to the motion for summary judgment, Raida asserted that the ownership of the underground storage tanks was registered with the fire marshal by Tareq from 2005 until 2018 and thereafter by Raida, who asserted ownership of the underground storage tanks as the real property owner.

### D. The trial court's judgments

### 1. The trial court's grant of summary judgment

{¶ 18} On November 23, 2020, the trial court journalized an entry ruling upon the motions for summary judgment and upon the declaratory judgment action. In determining the summary judgment motions, the trial court found Raida failed to set forth a genuine issue of material fact to support a judgment in her favor and granted summary judgment in favor of Qais, 871 Rocky River Dr., and Pearl Road. It denied Raida's motions for summary judgment against Qais and Tareq, and her motion for default judgment against Tareq. The trial court did not state its reasons for granting summary judgment and denying default judgment.

{¶ 19} The trial court granted summary judgment in favor of 871 Rocky River Dr. as to the declaratory judgment action, denied Raida's motion for summary judgment, and declared that 871 Rocky River Dr. to be the owner of the underground storage tanks, canopy, signs, fixtures, furnishings and equipment, and gas pumps located at 871 Rocky River Drive, Berea, Ohio. The trial court did not state reasons for its rulings.

## II. LAW AND ARGUMENT

### A. Fraudulent Transfer Act Case

{¶ 20} The appeal raises five assignments of error contesting summary judgment in both the Fraudulent Transfer Act case and the declaratory judgment case. The first and second assignments of error argue that the trial court erred by granting summary judgment in the Fraudulent Transfer Act case on the basis of the statute of limitations or on the basis of res judicata. In the third and fourth assignments of error, Raida argues that the trial court erred by denying her motion for default judgment against Tareq and by allowing appellees to oppose her summary judgment on Tareq's behalf.

{¶ 21} These assignments of error read:

1. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF QAIS ALLAN, 871 ROCKY RIVER DRIVE, INC. AND PEARL ROAD, INC. BECAUSE RAIDA ALLAN S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

2. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF QAIS ALLAN, 871 ROCKY RIVER DRIVE, INC. AND PEARL ROAD, INC. BECAUSE RAIDA ALLAN S

CLAIMS ARE NOT BARRED BY THE DOCTRINE OF RES JUDICATA.

3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING RAIDA ALLAN DEFAULT JUDGMENT AGAINST TAREQ ALLAN.

4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING QAIS ALLAN, 871 ROCKY RIVER DRIVE, INC. AND PEARL ROAD, INC. TO OPPOSE SUMMARY JUDGMENT ON BEHALF OF TAREQ ALLAN UNDER R.C. 1336.04.

**1. Issues of material fact remain regarding when the statute of limitations commenced under the Fraudulent Transfer Act**

{¶ 22} Raida argues that her claims are not barred by the statute of limitations because the transfer of the businesses from Tareq to Qais was never perfected and thus the statute of limitations did not begin to run until the day prior to the lawsuit being filed. Appellees argue that the trial court properly granted summary judgment because Raida was aware of the transfer over four years prior to the lawsuit being filed and the transfer of the stock certificates does not determine that the gas stations were not in fact transferred to avoid the application of the statute of limitations.

**a. Standards of Review**

{¶ 23} Under Civ.R. 56, the grant of a motion for summary judgment is appropriate where

(1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is averse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor.

*Legacy Village Investors, L.L.C. v. Bromberg,* 2021-Ohio-2930, 176 N.E.3d 1181, ¶ 9 (8th Dist.); Civ.R. 56(C).

{¶ 24} Civ.R. 56(C) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A trial court's grant of summary judgment is reviewed de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241

### b. Issues of fact remain as to when the statute of limitations commenced

{¶ 25} The complaint in this case was filed on November 28, 2018. R.C. 1336.09 provides that a lawsuit under the Fraudulent Transfer Act must be brought within four years. As such, at issue in determining whether or not the suit was brought within the four-year statute of limitations contained in R. C. 1336.09 is whether the businesses were transferred for purposes of the Ohio Fraudulent Transfer Act and, if so transferred, when those transfers occurred.

{¶ 26} Under the Ohio Fraudulent Transfer Act, a transfer is defined as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." R.C. 1336.01(L). In arguing that 817 Rocky River Dr. and Pearl Road

were transferred to Qais, appellees cite evidence of the transaction in the form of purchase agreements, filings with state agencies, and the findings of the domestic relations court. Raida argues that transfer was not complete because it was not supported by consideration and that because the corporate records of the businesses were incomplete, no transfer of the gas stations were perfected under Ohio law.

{¶ 27} Raida and appellees cite differing law to be used to determine if and when the transfer of the businesses to Qais took place. Raida argues that Ohio corporation law is definitive for the purposes of determining whether or not the ownership of the businesses changed. In addition to the failure of corporate records, Raida alleges in the complaint that there was no consideration paid for the businesses and, as such, the transfer never took place.

{¶ 28} Appellees assert that the lawsuit was filed outside the statute of limitations. They argue that the transfer of the gas stations took place as evidenced by the purchase agreements, public filings, and evidence and that Raida was aware of the transfers prior to November 2014.

{¶ 29} "Application of a statute of limitations presents a mixed question of law and fact; when a cause of action accrues is a question of fact, but in the absence of a factual issue, application of the limitations period is a question of law." *Schmitz v. NCAA*, 155 Ohio St.3d 389, 2018-Ohio-4391, 122 N.E.3d 80, ¶ 11. "R.C. 1336.06 specifically and expressly addresses the narrower issue of 'when a transfer is made' for the purposes of the [Ohio Fraudulent Transfer] Act." *Comer v. Calim*, 128 Ohio

App.3d 599, 604, 716 N.E.2d 245 (1st Dist.1998). In determining whether a transfer is made under the Fraudulent Transfer Act, R.C. 1336.06 provides in relevant part:

(A)(1) A transfer is made if either of the following applies:

\* \* \*

(b) With respect to an asset that is not real property or that is a fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee.

(2)(a) If applicable law permits the transfer to be perfected as provided in division (A) of this section and the transfer is not so perfected before the commencement of an action for relief arising out of a transfer that is fraudulent under section 1336.04 or 1336.05 of the Revised Code, the transfer is deemed made immediately before the commencement of the action.

(b) If applicable law does not permit the transfer to be perfected as provided in division (A) of this section, the transfer is made when it becomes effective between the debtor and the transferee.

{¶ 30} The Ohio Uniform Transfer Act was adopted in 1990 by Ohio with language promulgated by the Uniform Law Commission. In 2014, the Uniform Law Commission published an updated version of the laws, with commentary. The commentary to section 6 of the uniform act, codified verbatim in R.C. 1336.06, reads in pertinent part:

One of the uncertainties in the law governing the avoidance of transfers and obligations of the nature governed by this Act is the time at which the cause of action arises. Section 6 clarifies that point in time. \* \* \* For transfers of fixtures and assets constituting personalty, paragraph (1)(ii) fixes the time as the date of perfection against a judicial lien creditor not asserting rights under this Act. Perfection under paragraph (1) typically is effected by notice-filing, recordation, or delivery of unequivocal possession. \* \* \* The provision for postponing the time a transfer is made until its perfection is an

adaptation of Bankruptcy Code § 548(d)(1) (1984). When no steps are taken to perfect a transfer that applicable law permits to be perfected, the transfer is deemed by paragraph (2) to be perfected immediately before the filing of an action to avoid it; without such a provision to cover that eventuality, an unperfected transfer arguably would be immune to attack.

Uniform Voidable Transactions Act, https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=58b5d88d-a3b9-b3bf-873d-8787811656b1 (accessed Apr. 6, 2022).

{¶ 31} Although this statute may usually provide a means of determining a definite date of transfer for the purpose of the statute of limitations, in this case, application of this statute to definitively determine when the transfer occurred as a matter of law is precluded because there remain genuine issues of fact to determine if the transfer of the gas stations actually took place and, if so transferred, when the transfer of the gas stations occurred. There is contradictory evidence regarding whether or not the transfer of the businesses took place.

{¶ 32} Appellees cite to the purchase agreements as evidence of the transfer of the gas station businesses and argue further that required public filings made regarding liquor licensing and registration of the underground storage tanks indicate the transfers were perfected under R.C. 1336.06(A)(2)(a). In opposition, Raida cites to R.C. 1308.27 that governs how corporate shares are to be transferred as the applicable law to be applied to determine whether the transfers of the gas station businesses were perfected under R.C. 1336.02(A)(2)(a), arguing that no

transfer of the businesses from Tareq to Qais took place as the shares reflecting ownership of the businesses were never transferred or properly registered.

{¶ 33} Both parties submitted expert reports regarding the validity of the transfers. Raida submitted an expert report that highlighted the irregularities in the financial dealings between Tareq and Qais, and the report opined that the corporate documents of Pearl Road and 871 Rocky River Dr. indicate that no transfer of the businesses occurred. In contrast, Qais submitted a contrary report opining that the transfers did in fact occur.

{¶ 34} There exists disputed evidence as to whether, and when, the transfers of the gas stations were made and, if so, when those transfers were perfected.[2] The parties' reliance on either Ohio corporate law or the public filings alone are not definitive as to transfer of the ownership of the gas station businesses. The issuance of shares in a corporation is not necessarily determinative of ownership of the corporation. *See Estate of Thomas v. Thomas*, 6th Dist. Lucas No. L-11-1064, 2012-Ohio-3992, ¶ 40 ("Further, the issuance of a stock certificate is not necessary to establish corporate ownership."), citing *Algren v. Algren*, 183 Ohio App.3d 114, 119, 2009-Ohio-3009, 916 N.E.2d 491 (2d Dist.); *Graham v. Szuch*, 8th Dist. Cuyahoga No. 100228, 2014-Ohio-1727, ¶ 13. Similarly, the public filings asserting

---

[2] We also note that factual disputes regarding the transfers of the gas stations are better resolved at trial as the credibility of the parties was called into question during the divorce proceedings. In the divorce decree, the domestic relations court found Tareq's and Qais's testimony "lacked credibility" and that Raida's testimony contained some "credibility gaps." *See Allan*, 2019-Ohio-2111, at ¶ 80.

ownership of a business are evidence that, but not determinative of, a transfer of a business took place.

{¶ 35} Accordingly, to the extent that the grant of summary judgment was based upon the grounds that the suit was filed beyond the statute of limitations, it was improper. Appellant's first assignment of error is sustained.

### 2. The claims made in the complaint are not precluded by the doctrines of res judicata, claim preclusion, or issue preclusion

#### a. Res Judicata

{¶ 36} "Under the doctrine of res judicata, 'a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the same transaction or occurrence that was the subject matter of a previous action.'" *E. Cleveland Firefighters v. E. Cleveland*, 8th Dist. Cuyahoga No. 107034, 2019-Ohio-534, ¶ 14, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 1995-Ohio-331, 653 N.E.2d 226. Res judicata further encompasses the concepts of both claim and issue preclusion. *State ex rel. A.N. v. Cuyahoga Cty. Pros. Dept.*, 2020-Ohio-5628, 164 N.E.3d 526, ¶ 8 (8th Dist.) Claim and issue preclusion have been explained by this court as follows: "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6. "Issue preclusion, on the other hand, serves to prevent relitigation of any fact or

point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *Id.* at ¶ 7. For a claim or suit to be barred by issue preclusion, it is necessary to show:

> "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action."

*Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

{¶ 37} In this case, appellees allege that litigation in the divorce proceedings preclude a lawsuit brought under the Fraudulent Transfer Act. As to the elements of applying the doctrine of res judicata based upon issue or claim preclusion, the divorce decree satisfies the first element because it is a final decision on the merits by a court of competent jurisdiction. The fourth element is also met because the transfer of the businesses was considered in the divorce case in part in order for that court to determine what was to be considered marital property.

{¶ 38} However, under the second element, we find that Qais was not a party to the divorce and that he was not in privity with Tareq. The individual claims against Qais could not have been fully litigated in the domestic relations court and were dismissed by the court prior to trial. Although Qais and the businesses remained as parties in the divorce proceedings as stakeholders of the property, they

were not parties to the proceeding subject to judgment or relief to the extent such relief would be available under the Fraudulent Transfer Act.[3]

{¶ 39} As Qais was not a party subject to a personal judgment by the domestic relations court, in order to apply res judicata in the Fraudulent Transfer Act case, it would have to be determined Qais was in privity with Tareq. The Ohio Supreme Court recognized that "what constitutes privity in the context of res judicata is somewhat amorphous." *Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958 (2000). In *Wiggins Invest., Inc. v. Waterstreet Mgt., L.L.C.*, 8th Dist. Cuyahoga No. 103820, 2016-Ohio-4869, ¶ 15-16, we explained that there is a broad definition to determine privity and that a mutuality of interest may create privity in order to apply res judicata.

{¶ 40} Although Tareq and Qais had a common interest in having the transfers found valid in the divorce proceedings, we cannot say that they were in privity on the ultimate issue in the case as the determination of whether the businesses constituted marital property would not be detrimental to Qais's interests. That determination would affect Tareq's interest and affect the distribution of marital assets but would not, and did not, subject Qais to any personal judgment or damages for fraud as alleged in the instant lawsuit.

---

[3] Additionally, we note Qais argued that those claims against him could not be brought against him in the divorce proceedings. *Palos*, 2016-Ohio-3073, at ¶ 10.

{¶ 41} Further, to find a claim is barred by issue preclusion, there must be, in part, a determination that the issue was admitted or actually tried and decided as well as necessary to the final judgment. *Kelley v. Kelley*, 8th Dist. Cuyahoga No. 55944, 1989 Ohio App. LEXIS 5006, 3-4 (Sept. 28, 1989), citing *Monahan v. Eagle Pieher Industries, Inca*, 21 Ohio App.3d 179, 486 N.E.2d 1165 (1st Dist.1984). The domestic relations court heard evidence to determine whether or not the businesses constituted marital property. Whether or not the transfers actually took place was not necessary for the domestic relations court to fashion an equitable distribution of the marital property. Accordingly, we cannot say that a final determination of whether the transfers were legitimate, whether they consisted of fraud on Tareq's part, or whether they consisted of fraud on Qais's part was an issue that was material and necessary to the final judgment in the divorce decree in order to distribute marital property.

{¶ 42} The second assignment of error is sustained.

### 3. The trial court abused its discretion in denying Raida's motion for default judgment

### a. Standard of review and applicable law

{¶ 43} A trial court's ruling on a motion for default judgment is reviewed under the abuse of discretion standard. *Deutsche Bank Trust Co. Ams. v. Smith*, 8th Dist. Cuyahoga No. 89738, 2008-Ohio-2778, ¶ 30. Civ. R. 55 provides in pertinent part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party

entitled to a judgment by default shall apply in writing or orally to the court therefore."

{¶ 44} "[A] default judgment should not be granted when the complaint fails to state a claim upon which relief could be granted." *X-S Merchandise, Inc. v. Wynne Pro, L.L.C.*, 8th Dist. Cuyahoga No. 97641, 2012-Ohio-2315, ¶ 11, citing *Streeton v. Roehm*, 83 Ohio App. 148, 81 N.E.2d 133 (1st Dist.1948) (A "court should make its decision conform to the law as applicable to the facts proven, and if no cause of action is shown no default judgment in plaintiff's favor should be rendered.") *State ex rel. Pullins v. Eyster*, 5th Dist. Knox No. 2009-CA-09, 2009-Ohio-2846, ¶ 8.

{¶ 45} Civ.R. 8(C) requires that a party is required to plead affirmative defenses, including the "statute of limitations," "res judicata," or "any other matter constituting an avoidance or affirmative defense." Where a defendant does not enter an appearance, the defendant is precluded from raising an affirmative defense. *Shikner v. S & P Solutions*, 11th Dist. Lake No. 2004-L-108, 2006-Ohio-127, ¶ 18 ("Thus, when a defendant fails to answer, default judgment under Civ.R. 55(A) is appropriate because the defendant has admitted liability to the averments of the plaintiff's pleading and the defendant is precluded from raising an affirmative defense.").

## b. The trial court abused its discretion in denying the motion for default judgment

{¶ 46} Tareq has not appeared in the case and has not raised any affirmative defenses as raised by appellees. Raida argues that default judgment against him is appropriate on her claims.

{¶ 47} Appellees argue that the trial court properly denied the motion for default judgment where the trial court had exclusive jurisdiction of the marital property. This court has rejected this argument and found that a spouse may bring an action under the Fraudulent Transfer Act when attempting to collect a judgment entered in the divorce proceedings against an ex-spouse. *Dinu v. Dinu,* 8th Dist. Cuyahoga No. 91705, 2009-Ohio-2879, ¶ 8-10.

{¶ 48} In this case, the trial court did not explain its reasoning for denying the motion for default judgment and we are left to presume that because the trial court granted summary judgment against Raida, it therefore exercised its discretion to deny the default judgment motion. However, in resolving Raida's first and second assignments of error, we determined summary judgment was not appropriate on the basis of the affirmative defenses raised by appellees in their motion for summary judgment. Accordingly, where summary judgment was not appropriate based upon affirmative defenses alleged by appellees, we find that the trial court abused its discretion by denying the motion for default judgment.

{¶ 49} The third assignment of error is sustained. Based on our resolution of this assignment of error, we find the fourth assignment of error moot.

## B. Declaratory Judgment Action

**{¶ 50}** Raida's fifth assignment of error reads:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF 871 ROCKY RIVER DRIVE, INC. DECLARING IT THE OWNER OF THE UNDERGROUND STORAGE TANKS, CANOPY, SIGNS, FIXTURES, FURNISHINGS AND EQUIPMENT, AND GAS PUMPS LOCATED AT 871 ROCKY RIVER DRIVE, BEREA, OHIO.

**{¶ 51}** 871 Rocky River Dr. sought declaratory judgment over the ownership of the underground storage tanks, canopy, signs, fixtures, furnishings and equipment, and gas pumps located at 871 Rocky River Drive, Berea, Ohio and filed for and was granted summary judgment.

**{¶ 52}** An action for declaratory judgment "enables a court to declare the rights, status, and other legal relations of the parties." *Priore v. State Farm Fire & Cos. Co.,* 8th Dist. Cuyahoga No. 99692, 2014-Ohio-696, ¶ 14; Civ.R. 57; R.C. 2721.02(A). The ownership of underground gasoline storage tanks is subject to certain registration requirements under Ohio Law. R.C. 3737.88, et seq.; *see also State ex rel. Dewine v. Klepper*, Cuyahoga C.P. No. 2012CV0422, 2014 Ohio Misc. LEXIS 3402 (Nov. 21, 2014) (The Ohio State Fire Marshall is tasked with "monitoring and compelling compliance with state laws and rules governing the ownership and operation of underground storage tanks in Ohio.").

**{¶ 53}** In this case, Tareq acquired the ownership of the gas station business and underground storage tanks when he bought the gas station and real property in 2004. Thereafter, 871 Rocky River Drive and Tallan, LLC were created. 871 Rocky

River Dr. argues that it acquired ownership of the underground storage tanks in 2005, as evidenced by Tareq's initial registration of 871 Rocky River Dr. as both the owner and operator of the underground storage tanks with the state fire marshal and through the further registration of the tanks through 2018. Additionally, 871 Rocky River Dr. argues that the bill of sale executed by Tareq on behalf of Tallan, Inc. and by Qais as president of 871 Rocky River Dr. evidenced ownership of the tanks.

{¶ 54} Raida argues that underground storage tanks are customarily a part of the real property and that when she was granted the membership interest in Tallan, LLC and thus title to the real property in which the underground storage tanks are located, she took steps to register her ownership of the underground storage tanks with the fire marshal.

{¶ 55} In resolving the first and second assignments of error, we found that there remain issues of fact as to whether the transfer of 871 Rocky River Dr. took place and, if so, when the transfer took place. As such, in determining the ownership of the underground tanks, there remains conflicting evidence of the transfer of ownership of the underground storage tanks and the grant of summary judgment in the declaratory judgment action is reversed.

{¶ 56} Appellant's fifth assignment of error is sustained.

III. CONCLUSION

{¶ 57} We reverse the trial court's grant of summary judgment in both the Fraudulent Transfer Act case and the Declaratory Judgment Action because there

remain issues of material fact regarding whether the transfer of the 871 Rocky River Drive and Pearl Road occurred and, if it did occur, when the transfer was perfected. This case is remanded to the trial court for further proceedings.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EMANUELLA D. GROVES, J., CONCUR