| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MAGNUM STEEL & TRADING, L.L.C.
    Appellant

v.

RODERICK LINTON BELFANCE, L.L.P.,
et al.
    Appellees

C.A. No.    27517

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012-08-4859

DECISION AND JOURNAL ENTRY

Dated: August 26, 2015

SEAN C. GALLAGHER, Judge.

{¶1}    Appellant Magnum Steel & Trading, L.L.C., appeals the decision of the trial court that granted summary judgment in favor of appellees Roderick Linton Belfance, L.L.P., David S. Nichol, and Larry R. Bach. Upon review, we affirm.

{¶2}    On August 27, 2012, Magnum Steel & Trading, L.L.C. ("Magnum"), filed a complaint against Gerald Mink ("Mink") and other defendants, asserting claims for fraudulent transfers under R.C. Chapter 1336, which is the Ohio Uniform Fraudulent Transfer Act ("UFTA"). The complaint alleged that Mink fraudulently transferred assets with an actual intent to hinder, delay, or defraud Magnum's collection on a judgment. Magnum had obtained a large verdict against Mink in May 2011 in a lawsuit that raised claims against Mink and others for misappropriation of Magnum's trade secrets and other wrongful acts. Mink and his son Jarrod Mink were employees of Magnum who were fired after starting a new business known as FerroTrade Corporation ("FerroTrade"). In the underlying action, Mink and other defendants

were represented by attorneys David S. Nichol ("Attorney Nichol") and Larry R. Bach ("Attorney Bach") of the law firm Roderick Linton Belfance, L.L.P. ("RLB").

{¶3}    Following initial proceedings in this case, Magnum obtained leave to file a first amended complaint that added several new counts and added RLB as a defendant. The original defendants were dismissed from the action after a settlement agreement was entered with Magnum. The lawsuit proceeded as to RLB. Thereafter, Magnum obtained leave to file a second amended complaint naming RLB, Attorney Nichol, and Attorney Bach as defendants, and asserting claims for fraudulent transfers, civil conspiracy, and civil aiding and abetting. These defendants filed a motion for summary judgment that was granted by the trial court.

{¶4}    There were several transfers of property by Mink that formed the basis of the claimed fraudulent transfers and civil conspiracy. Mink testified that after the verdict was rendered, he concluded that he needed to raise some cash to pay outstanding bills relating to the trial and to fund a possible settlement with Magnum. Although Mink testified that he told his attorneys he wanted to take action with respect to his assets so Magnum could not attach them, there was no evidence that the RLB attorneys collaborated in a scheme with Mink. There was evidence that Mink was advised by Attorney Nichol and Attorney Bach that the sale of any asset should be for fair market value. Mink was aware that his transactions would be subject to scrutiny.

{¶5} In July 2011, Mink sold his stock in FerroTrade to his son Jason Mink for $105,000. There was evidence that the stock was sold for the higher of two independent appraisals and that the legal advice given with regard to the sale of stock was "after [Mink] indicated that he wanted to sell his stock to raise assets to pay [Magnum]." The proceeds were placed into an IOLTA trust account under the "short name" of "FerroTrade" for all the common defendants to the Magnum litigation. There was no evidence that these funds were hidden from Magnum. Mink directed that some of the sale proceeds be used to pay outstanding expenses, including legal fees and other bona fide litigation expenses from the underlying trial. The remaining $60,000 was returned to Mink, who deposited that sum into a "special account" that he had opened upon the advice of his South Carolina counsel.

{¶6} Mink also made the decision to sell his airplane to raise funds that could be used toward a settlement and to satisfy mounting legal bills, as well as to eliminate the expenses associated with maintaining the plane. Mink had previously offered the airplane to Magnum as part of a settlement proposal. With regard to any sale of assets, Mink was advised by Attorney Nichol that it needed to be at a fair market value. Mink eventually used an aircraft broker to sell the plane. The funds were placed into Mink's special account. There is no evidence that the RLB attorneys were involved in the sale of the airplane or of any conspiracy involving the airplane or the proceeds of the sale.

**{¶7}** According to Mink, his special account was treated as a fund for a potential settlement with Magnum. However, because no other funds were available, some of the funds in the special account were spent by Mink to fund unanticipated and emergency expenses, including among other expenses, his wife's medical bills and paying an auto lease for a vehicle that replaced his wife's ten-year-old vehicle after it broke down. Attorney Nichol and Attorney Bach never advised Mink with regard to the auto lease, and there was no evidence of a conspiracy regarding these payments.

**{¶8}** Mink had been receiving payments of $3,000 per month on a $100,000 loan he had provided FerroTrade. He was advised to have a note written to confirm the loan obligation, that the obligation should continue to be repaid in the same manner, and that the payments could be attached by Magnum. On his own initiative, Mink had FerroTrade increase two payments to $20,000 each. There is no evidence that the RLB attorneys were involved in the increased payments. Further, no evidence was presented that the attorneys advised Mink to structure repayments in a manner that would hinder attachment by Magnum.

**{¶9}** The trial court granted summary judgment on September 17, 2014.[1] In a detailed opinion, the trial court found that Magnum's fraudulent transfer claims failed because the funds paid to appellees "were all received for bona fide legal services rendered." The trial court further found "facts supporting a claim of civil conspiracy are lacking as a matter of law."

---

[1] A counterclaim that was filed by the defendants was declared moot and dismissed without prejudice.

{¶10} Magnum timely filed this appeal. Magnum's sole assignment of error asserts the trial court erred by granting summary judgment because the evidence presented genuine issues of material fact.

{¶11} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party." *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7.

{¶12} Under UFTA, a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer (1) with actual intent to hinder, delay, or defraud any creditor of the debtor, or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation and if other conditions exist. R.C. 1336.04(A); R.C. 1336.05. By its own terms, R.C. Chapter 1336 only applies to the transferor and transferee of the funds. The trial court correctly determined that only the legal fees paid by Mink to appellees would be subject to a claim under UFTA.

{¶13} Pursuant to R.C. 1336.08, a transfer is deemed not fraudulent against a transferee who took the property in good faith for reasonably equivalent value. The record reflects that the funds received by appellees were for bona fide legal fees and litigation expenses rendered and represented an exchange of reasonably equivalent value. Although Magnum argues that there is an issue of fact as to whether Mink's money was used to pay legal bills owed by FerroTrade, there is no evidence showing FerroTrade was obligated to pay the legal fees. Rather, the

evidence presented to the trial court demonstrated that Mink was the primary defendant at the underlying trial resulting in the judgment rendered against him, and that the legal fees and expenses at issue were legitimate and owed by him. To the extent retainers were provided by Mink, those funds were placed into an IOLTA account and the funds remained the property of Mink and subject to attachment. There is no evidence to dispute that RLB received payment only after bona fide legal services were performed. Further, there is no evidence that appellees acted with an actual intent to hinder, delay, or defraud Magnum with regard to these funds.

{¶14} Assuming appellees can be held liable on the civil conspiracy claim, there is no evidence to support this claim for relief. A "civil conspiracy" is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987). There must be an underlying unlawful act before a civil conspiracy claim can succeed. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859. The requisite malice involved in the tort is "'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Id*., quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960).

{¶15} Magnum argues that it has raised a genuine issue of material fact of whether Mink transferred his assets with actual intent to hinder or delay Magnum's collection. Magnum further claims that inferences can be made upon which it can be concluded that appellees participated in the scheme of transfers with an actual intent to hinder and delay collection by Magnum. However, our review of the record reflects that evidentiary support for this claim is lacking. Magnum's claim of a malicious combination is based upon nothing more than conjecture.

{¶16} The record reflects that the advice provided by the RLB attorneys to Mink was within the course and scope of the attorney-client relationship and did not extend beyond the proper bounds of the relationship. Attorney Bach and Attorney Nichol provided advice to Mink as a judgment debtor with regard to his options concerning the underlying judgment of Magnum, including attempting to settle with Magnum. The attorneys advised Mink that any sale or transfer of assets should be for equivalent value and that any debts owed to Mink by FerroTrade should be repaid in the normal course of business and were attachable by Magnum. There is no evidence that appellees advised Mink to hide or conceal any asset from Magnum or to squander his money for purposes of rendering himself uncollectible. Further, there is no evidence that appellees acted with the specific willful purpose to injure Magnum.

{¶17} Although Mink signed an affidavit in connection with his settlement with Magnum, in which he averred his attorneys at RLB assisted him with making transfers of his assets to avoid attachment, additional details provided during deposition testimony refuted any

implication of a malicious combination involving appellees. The affidavit of Jeff Shupe, who was an employee of FerroTrade, consisted largely of inadmissible hearsay, and any inferences against appellees were not borne out by the record. Further, the opinions offered on behalf of Magnum by its purported expert, Scott Scharf, were based upon assumed facts and made before the depositions were taken in this matter. The facts as developed in the record do not support Magnum's claims.

{¶18} Upon our review of the record, we conclude the trial court did not err in granting summary judgment in favor of appellees.[2] Appellant's sole assignment of error is overruled.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

---

[2] We need not address Magnum's standing to raise the UFTA claim, qualified immunity, and other ancillary issues.

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SEAN C. GALLAGHER
FOR THE COURT

DONOFRIO, P.J.
WAITE, J.
CONCUR.

(Sitting by assignment: Judge Gene Donofrio and Judge Cheryl Lynne Waite of the Seventh District Court of Appeals and Judge Sean C. Gallagher of the Eighth District Court of Appeals.)

APPEARANCES:

DEAN S. HOOVER, Attorney at Law, for Appellant.

ALAN M. PETROV, Attorney at Law, for Appellee.