[Cite as *Allan v. Allan*, 2026-Ohio-1187.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| RAIDA ALLAN, | : | |
| Plaintiff-Appellant, | : | No. 114193 |
| v. | : | |
| TAREQ ALLAN, ET AL., | : | |
| Defendants-Appellees. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 2, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-907570

### *Appearances:*

RaslanPla & Company, LLC, Jorge Luis Pla, Nadia R. Zaiem, and Erika Molnar, *for appellant*.

Dinn, Hochman & Potter, LLC, Edgar H. Boles, and Andrew J. Yarger, *for appellees* Qais Allan, 871 Rocky River Drive, Inc., and Pearl Road, Inc.

LISA B. FORBES, P.J.:

{¶ 1} Plaintiff-appellant Raida Allan ("Raida" or "Plaintiff") appeals from two judgment entries issued by the Cuyahoga County Court of Common Pleas in a fraudulent-transfer action she brought against defendants-appellees, Tareq Allan

("Tareq"), Tareq's brother Qais Allan ("Qais"), and two corporate gas-station entities — 871 Rocky River Drive, Inc. and Pearl Road, Inc. (together, "the Gas Stations"). The first judgment entry, dated April 29, 2024, granted judgment notwithstanding the verdict ("JNOV") in favor of Qais and the Gas Stations. The second judgment entry, dated April 25, 2025, denied Raida's motion for JNOV as to Tareq. After a thorough review of the facts and the law, we reverse both judgments and remand the matter to the trial court for further proceedings.

## I. Background and Procedural History

{¶ 2} This case concerns allegations of the fraudulent transfer of two gas-station businesses during the course of Raida and Tareq's marital separation and divorce. This is the second appeal this court has heard in this case. The following facts are relevant to our resolution of this appeal.

### A. Raida and Tareq's Separation and Divorce

{¶ 3} Raida and Tareq were married in October 2002. During the marriage, Tareq acquired two gas-station businesses. The first gas station, located on Pearl Road in Middleburg Heights, was owned by Pearl Road, Inc. which, in turn was originally owned by Raida and was transferred to Tareq through a corporate-stock transfer of certificated shares during their marriage. The second gas station, located at 871 Rocky River Drive in Berea, was purchased by Tareq in 2004 through the entity 871 Rocky River Drive, Inc., which Tareq wholly owned. That same year, Tallan, LLC — a business solely owned by Tareq — purchased the real property on which the 871 Rocky River Drive gas station is situated.

{¶ 4} Raida filed for divorce in 2010. She dismissed her divorce action in 2011. In 2015, Tareq filed for divorce. A trial was had in that divorce case that lasted 14 days and spanned the months July, September, and November 2017.

{¶ 5} On April 20, 2018, a final judgment and divorce decree was entered by the domestic relations court. In its judgment entry following trial, the domestic relations court stated that, in addition to addressing what constituted marital and separate property of Raida and Tareq, "the issue that involved the court's time in trial was the question of . . . whether [Qais] purchased the two gas stations owned during the marriage for fair market value *or at all*." (Emphasis added.) The court emphasized the difficulty it faced in making sense of the evidence, noting that the testimony and exhibits presented by Tareq and Qais were contradictory, confusing, and, overall, not credible. The court also noted the late disclosure of key documents, stating, "In addition, some documents appeared very late in the litigation, such as the corporate resolution relating to the transfer of Pearl Road Inc."

{¶ 6} The domestic relations court further noted that if the gas station business at 871 Rocky River Drive had in fact been transferred to Qais, such a transfer would have violated a court order staying any sale of the property during the first divorce proceeding filed by Raida in 2010 but ultimately dismissed in 2011. The court noted that Tareq refused to acknowledge his violation of the stay order during his testimony, even though Tareq testified that the business was transferred during that time.

{¶ 7} After providing an extensive explanation of the confusing nature of the evidence and the difficulty in determining whether the Gas Stations had been transferred, and if so, whether they were transferred for fair market value, the court ultimately concluded that Tareq "has engaged in financial misconduct in that he transferred the two gas station businesses with convenience stores and the liquor licenses to his brother to avoid an equitable division of property" in the divorce. The court further found that it was "not desirable to split the businesses between [Tareq and Raida] even if it was appropriate to divest Qais of title in [domestic relations] court," because the court found that doing so would require the sale of the businesses, which, in turn, would only diminish their value. Accordingly, the domestic relations court determined that the *value* of the Gas Stations would be considered marital property for purposes of its distributive award. The court explained that determining value was difficult due to the incomplete and contradictory evidence submitted, which included tax and other financial documents that appeared to have been falsified by Tareq.

{¶ 8} In the divorce decree, the domestic relations court awarded Raida the 871 Rocky River Dr. real estate and the marital home, in addition to other assets. It also ordered Tareq to pay nearly $550,000 in spousal support, child support, arrearages, and attorney fees to Raida.

{¶ 9} Tareq appealed the domestic relations court's judgment. The judgment and divorce decree were upheld on appeal. *Allan v. Allan*, 2019-Ohio-2111 (8th Dist.).

## B. The Fraudulent-Transfer Action

{¶ 10} On November 28, 2018, Raida filed the lawsuit from which this appeal derives, against Tareq, Qais, and the Gas Stations. In it she alleged that Tareq fraudulently transferred the Gas Stations to Qais, without consideration, in an attempt to make himself insolvent with the knowledge of a likely impending financial judgment against him in the upcoming divorce proceeding. Raida further alleged that Qais received the transfers with knowledge of their illegality. Raida sought rescission of the Gas Station transfers so as to collect on the money judgment she had obtained against Tareq in their divorce, punitive damages, and other remedies including the appointment of a receiver over the Gas Stations, garnishment of the Gas Stations' accounts, and an injunction against the further disposition of the Gas Stations.

{¶ 11} Qais and the Gas Stations answered the complaint. Tareq, however, did not file an answer. In their answer, Qais and the Gas Stations asserted the statute of limitations as a bar to Raida's fraudulent-transfer claims.

{¶ 12} On February 5, 2019, Raida filed an amended complaint in which she made the same assertions and requests for relief as the original complaint but additionally alleged that the Gas Station transfers had not been completed under Ohio law. Raida's amended complaint asserted that because the transfers were not complete, the transfers should be deemed to have occurred immediately before the filing of the lawsuit for statute of limitations purposes pursuant to R.C. 1336.06(A)(2)(a).

{¶ 13} Qais and the Gas Stations filed a motion for summary judgment arguing that Raida's claims were barred by the statute of limitations and that the claims were barred by res judicata. With respect to the statute of limitations, Qais and the Gas Stations argued that pursuant to R.C. 1336.09, a claim for fraudulent transfer must be brought within four years of the transfer or within one year of discovery of the transfer and that in this case the transfers of the Gas Stations occurred more than four years prior to Raida filing her fraudulent-transfer action against them on November 28, 2018. Regarding res judicata, Qais and the Gas Stations argued that the divorce decree determined the issue of whether there had been a fraudulent transfer in light of the court determining that title to the Gas Stations was in Qais's name and the fact that it decided not to divest Qais of title, but rather to consider the value of the assets in its determination of the equitable division of property. Qais and the Gas Stations argued the domestic relations court's judgment prevented Raida from attempting to claw-back the transfer through a separate, subsequent fraudulent-transfer claim.

{¶ 14} Raida opposed Qais and the Gas Stations' motion for summary judgment. She also filed a motion for default judgment against Tareq in light of his failure to appear in the lawsuit.

{¶ 15} The trial court granted Qais and the Gas Stations summary judgment against Raida, concluding that Raida had failed to set forth a genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. The court did not articulate its reasons, nor did it indicate whether its ruling was

based on the statute of limitations, res judicata, or both. In the same judgment, the trial court denied Raida's motion for default judgment against Tareq, again without explanation. Raida appealed both the grant of summary judgment and the denial of her motion for default judgment to this court.

## C. This Court's Resolution of the First Appeal

{¶ 16} In the first appeal, this court reversed the trial court's grant of summary judgment in favor of Qais and the Gas Stations and remanded the matter for further proceedings. *See Allan v. Allan*, 2022-Ohio-1488 (8th Dist.). This court recognized that the reason the trial court granted summary judgment was unclear from the summary nature of the court's order. Therefore, this court analyzed the applicability of both the statute of limitations and res judicata to the case.

{¶ 17} Concerning the statute of limitations, this court found that a genuine issue of material fact remained regarding whether Raida filed her claims for fraudulent transfer within the applicable statute of limitations. The court pointed out that under R.C. 1336.09(A), defining when a transfer is deemed to have occurred,

> (2)(a) If applicable law permits the transfer to be perfected as provided in division (A) of this section and the transfer is not so perfected before the commencement of an action for relief arising out of a transfer that is fraudulent under section 1336.04 or 1336.05 of the Revised Code, the transfer is deemed made immediately before the commencement of the action.

After reviewing both parties' evidence, this court concluded that "there exists disputed evidence as to whether, and when, the transfers of the gas stations were made and, if so, when those transfers were perfected." *Allan* at ¶ 34.

{¶ 18} Further, this court determined that res judicata did not bar Raida's fraudulent-transfer action because Qais and the Gas Stations were not parties to the domestic relations court's judgment. This court further noted:

> Whether or not the transfers actually took place was not necessary for the domestic relations court to fashion an equitable distribution of the marital property. Accordingly, we cannot say that a final determination of whether the transfers were legitimate, whether they consisted of fraud on Tareq's part, or whether they consisted of fraud on Qais's part was an issue that was material and necessary to the final judgment in the divorce decree in order to distribute marital property.[1]

*Id.* at ¶ 41.

{¶ 19} Additionally, in the first appeal, this court reversed the trial court's denial of Raida's motion for default judgment against Tareq, where Tareq had not appeared in the case by way of filing an answer or otherwise, and thus had not raised any affirmative defenses, as Qais and the Gas Stations had done. This court ordered the trial court, upon remand, to grant Raida's motion for default judgment.

**D. Trial Court Proceedings Following Remand**

{¶ 20} On remand, in its judgment entry finding Tareq in default, the trial court stated, "[A] hearing on damages will be set by a separate order." The trial court, however, never held a hearing to determine damages as to Tareq. Instead, it

---

[1] Although the domestic relations court ultimately determined, for purposes of equitable distribution, that Tareq had transferred the Gas Stations to Qais to avoid equitable division of the marital property, that determination was made within the context of classifying and distributing assets in a divorce proceeding rather than adjudicating a claim under the Ohio Uniform Fraudulent Transfer Act.

instructed the parties to prepare for trial. A jury trial commenced on March 15, 2024.

{¶ 21} After the parties presented their evidence and testimony over the course of seven days, the jury was instructed. These instructions did not ask the jury to decide whether the Gas Stations transfers had been perfected for purposes of determining the transfer date under R.C. 1336.06. Over Raida's counsel's repeated objections, and Qais and the Gas Stations' counsel's repeated insistence, the trial court determined that no instruction on perfection was necessary because corporate-stock transfers were not capable of perfection under Ohio law and, therefore, R.C. 1336.06 would not apply. Additionally, while the jury was instructed that it would determine damages against Tareq, as a defaulting party, the trial court granted Qais and the Gas Stations' request to leave Tareq off the jury-verdict forms as to damages. This, too, was done over Raida's counsel's repeated objection.

{¶ 22} Following deliberations, the jury returned a verdict concluding that Tareq did fraudulently transfer the Gas Stations to Qais, that Qais did not receive the Gas Stations in good faith, and that Qais did not pay reasonably equivalent value for them. The jury awarded Raida $598,191.51 in damages representing the unpaid divorce judgment, $1,715,175.00 in economic damages, $250,000.00 in noneconomic damages, and $3,000,000.00 in punitive damages. The jury also awarded Raida her attorney fees.

{¶ 23} After the verdict was read, the trial court excused the jury and then read aloud the jury's answers to the parties' interrogatories. Pursuant to

interrogatory Nos. 1 and 2, the jury found that the Gas Stations had, in fact, been transferred. Pursuant to interrogatory Nos. 4 and 6, the jury found that the Gas Stations were transferred before November 28, 2014. The jury also answered interrogatory Nos. 3 and 5 finding that, as relates to each of the transfers, Raida did not discover the transfers and could not have reasonably discovered the transfers before November 28, 2017—one year before she filed her lawsuit

### 1. JNOV Motions

{¶ 24} After dismissing the jury and then reading the answers to the jury interrogatories in open court, the court, sua sponte, ordered the parties to file briefs on why a JNOV should or should not be entered. Specifically, the court stated:

> At this point, I would ask the — the jury has spoken, the jury has spoken through its verdict and has spoken through its interrogatories. I don't have to tell anybody in this room that the answers to certain questions raise a statute of limitations issue, okay? Specifically, jury interrogatory numbers 4 and 6. There is also an issue in jury interrogatory number 3 and another one about her knowledge, okay? I'm a going to ask the parties to brief — I understand the statute of limitations, but I want — I'm going to ask the parties to brief the Court as it relates to Raida's knowledge, because the Court wants to become more aware of that. I understand the general 4-year statute of limitations, but I also want the parties to brief the Court on the issue [Raida's counsel] has raised throughout, that the failure to perfect deems the statute of limitations to occur immediately before the filing of the action.

{¶ 25} In their motion for JNOV, Qais and the Gas Stations argued that while the jury correctly determined the transfers of the Gas Stations occurred before November 28, 2014, it incorrectly concluded that Raida did not know of and could not reasonably have discovered the transfers before November 28, 2017. Qais and the Gas Stations asserted that reasonable minds could only conclude Raida

discovered the transfers on June 19, 2015, at the latest, because Raida set forth the details of each transfer in a pleading she filed in the second divorce case, in which she alleged counterclaims for fraud against Tareq and cross-claims for fraud against Qais and the Gas Stations, whom she joined as third-party defendants.[2]

{¶ 26} In opposing Qais and the Gas Stations' JNOV motion, Raida advanced several arguments in support of upholding the jury's verdict in her favor. Among them, she contended that the record contained evidence showing she did not discover, and could not reasonably have discovered, the transfers before the domestic relations court's judgment entry of divorce issued on April 20, 2018, and that the jury was entitled to weigh and credit this evidence.

{¶ 27} Raida also filed a separate JNOV motion requesting that the court amend the jury-verdict forms to include Tareq's name on the damages awards. She argued that this amendment was necessary because, although the court had entered a default against Tareq before trial, it never entered judgment for damages against him and instead had indicated it would leave that determination to the jury. However, when it came time to instruct the jury on damages as to Tareq, the court refused to do so over repeated objections by Raida's counsel, resulting in no damages award against Tareq despite the existence of a finding of default against him.

---

[2] Raida's claims against Qais and the Gas Stations were dismissed by the trial court before trial. The court kept Qais and the Gas Stations on as parties to the divorce in a limited capacity as stakeholders in the business properties.

## 2. The Trial Court's Ruling on JNOV

{¶ 28} On July 3, 2024, the trial court entered a judgment granting Qais and the Gas Stations' motion for JNOV, finding that "the record does not contain sufficient evidence that [Raida] did not or could not have reasonably discovered the transfers before November 28, 2017." In support of its judgment, the trial court focused on Raida's testimony at trial that Tareq had told her in November 2014, when she phoned him about support payments having stopped, that he had sold "the gas station" and that she was aware of statements in Tareq's February 2015 divorce complaint that asserted that the Gas Stations were no longer part of the marital estate. The court also highlighted Raida's statements on cross-examination when confronted with her June 19, 2015 filing of counterclaims for fraud against Tareq, and cross-claims for fraud against Qais and the Gas Stations in the divorce proceeding in which Raida averred that Tareq "purportedly" transferred his interests in the Gas Stations to his brother for a "purported" sum of money.

{¶ 29} The trial court recognized that the domestic relations court's judgment entry of April 20, 2018, could be argued to be evidence in support of the jury's finding that Raida had not discovered or could not reasonably have discovered the transfers sooner. The domestic-relations judgment identified inconsistent evidence presented in the divorce trial regarding the ownership of the Gas Stations, as well as inconsistent and highly questionable testimony as to whether the Gas Stations had been transferred and if so, whether they were legally transferred. However, the trial court stated in his judgment entry on JNOV that, although Raida

testified that the domestic-relations journal entry was the "basis or grounds of why" Raida was before the trial court in her fraudulent-conveyance action, there had been no testimony that this entry led to her discovery of the transfers. According to the trial court, Raida's testimony was, therefore, not sufficient evidence that she was unaware of the transfers before November 28, 2017.

{¶ 30} Finally, the trial court determined that R.C. 1336.06(A)(2)(a) — regarding when a transfer occurs where an asset is capable of perfection — was inapplicable. According to the trial court, R.C. 1336.06(A)(2)(a) applies only to secured transactions and stock transfers are not secured transactions. Therefore, the court determined that, because the statute did not apply, the statute of limitations could not be deemed to have begun running the day before the filing of the fraudulent-transfer action as would happen if the transfer of the asset was capable of perfection but had not been perfected.

{¶ 31} The court noted that the jury found that the transfers were made over four years prior to Raida filing her fraudulent-transfer action and, therefore, Raida's claims were not filed within the four-year statute of limitations found in R.C. 1336.09. The court further concluded that Raida failed to present sufficient evidence demonstrating that she did not discover and could not have reasonably discovered the fraudulent transfer prior to one year before filing her claims on November 28, 2018. Consequently, under R.C. 1336.09 the trial court concluded the statute of limitations barred Raida's claims.

### E. Filing of the Second Appeal

{¶ 32} Raida appealed the trial court's decision granting Qais and the Gas Stations' JNOV. We sua sponte dismissed the appeal for lack of a final, appealable order, noting that the court had not ruled on Raida's separate motion for JNOV. On remand, the trial court issued a judgment on April 25, 2025, concluding that Raida's claims against Tareq were barred by the statute of limitations for a fraudulent-transfer claim, because she did discover or reasonably could have discovered the transfers before November 28, 2017 — one year prior to filing suit.

{¶ 33} Raida's appeal was reinstated. Raida now raises the following assignments of error:

> I. The court erred in granting Qais Allan, 871 Rocky River Drive, Inc. and Pearl Road Inc.'s motion for judgment notwithstanding the verdict.
>
> II. The court erred and violated the law of the case established by this court in Allan I.
>
> III. The court erred in not granting Raida Allan's motion for judgment notwithstanding the verdict.
>
> IV. The court erred and abused its discretion when it denied Raida Allan leave to file a motion for partial summary judgment.

## II. LAW AND ANALYSIS

### A. The Trial Court Erred in Granting JNOV

{¶ 34} In her first assignment of error, Raida asserts that the trial court erred in granting JNOV in favor of Qais and the Gas Stations. We agree.

{¶ 35} Civ.R. 50(B)(1), which governs post-trial motions for JNOV, allows a party to "serve a motion to have the verdict and any judgment entered thereon set

aside and to have judgment entered in accordance with the party's motion . . . ." The standard for granting a motion for JNOV is identical to that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). *See Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679 (1998). Civ.R. 50(A)(4) provides:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 36} "'[A] motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.'" *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 2008-Ohio-3833, ¶ 22, quoting *O'Day v. Webb*, 29 Ohio St.2d 215 (1972), paragraph three of the syllabus. The single salient question of law in a motion for JNOV is "whether the evidence, construed most strongly in favor of [nonmoving party], is legally sufficient to sustain the verdict." *Id.* at ¶ 23, citing *Osler v. Lorain*, 28 Ohio St.3d 345, 347 (1986). To be legally sufficient to sustain the verdict, the prevailing party must have "presented *some evidence* going to every element of the claim." (Emphasis added.) *Black v. Hicks*, 2020-Ohio-3976, ¶ 70 (8th Dist.), citing *Vega v. Tomas*, 2017-Ohio-298, ¶ 9 (8th Dist.). A court may not consider the weight of the evidence or the credibility of the

witnesses when ruling on a motion for JNOV. Civ.R. 50(B)(3); *see also Texler* at 679.

{¶ 37} As a question of law, appellate courts review a trial court's ruling on a JNOV motion de novo. *See Environmental Network Corp.* at ¶ 23. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

{¶ 38} Raida's fraudulent-transfer claim was brought under R.C. 1336.04(A)(1). The applicable statute of limitations for such claims is articulated in R.C. 1336.09(A), which states:

> A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code is extinguished unless an action is brought in accordance with one of the following:
>
> (A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant . . . .

{¶ 39} As noted by this court in the first appeal, under R.C. 1336.09, a transfer "is defined as 'every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.'" *Allan*, 2022-Ohio-1488, at ¶ 26 (8th Dist.), citing R.C. 1336.01(L). Where a transfer involves an asset capable of perfection, but the

transfer has not been perfected before the suit is commenced, the transfer is deemed to have occurred immediately prior to the commencement of the lawsuit. R.C. 1336.06(A)(2)(a).

{¶ 40} The "application of a statute of limitations presents a mixed question of law and fact." *Schmitz v. NCAA*, 2018-Ohio-4391, ¶ 11. When a cause of action accrues is a question of fact, while application of the limitations period becomes a question of law where no factual dispute as to the accrual date exists. *See id.*

{¶ 41} Here, the jury was given numerous interrogatories to answer with the first six touching on issues pertinent to this appeal. Interrogatory Nos. 1 and 2 required the jury to answer whether ownership of the gas stations at 871 Rocky River Drive and Pearl Road, respectively, had even been transferred. The jury answered "yes" to each of these. Interrogatory Nos. 4 and 6 asked whether the respective transfers occurred prior to November 28, 2014 — i.e., more than four years before Raida filed her lawsuit. The jury answered "yes" to each of these interrogatories. Finally, with regard to interrogatory Nos. 3 and 5, the jury was asked if Raida discovered that the Gas Stations were transferred, or if she could have discovered that they transferred, before November 28, 2017? The jurors responded "no" to both questions. Accordingly, the legal import of the jury's answers to the interrogatories is that Raida's fraudulent-conveyance lawsuit was not barred by the statute of limitations.

{¶ 42} In granting JNOV to Qais and the Gas Stations, the trial court concluded that the jury's answers to interrogatories were not supported by sufficient

evidence. Contrary to the trial court's ruling, we find that the jury's finding was supported by sufficient evidence and that the trial court engaged in impermissible weighing of the evidence.

{¶ 43} To understand why the jury's finding is supported by sufficient evidence it is important to understand how the posture of this case affects the analysis. Fraudulent-transfer cases commonly present in a posture where the parties agree that a transfer of some asset or property occurred, but dispute whether the transfer was fraudulent. *See, e.g., Saez Assocs. v. Global Reader Servs.*, 2011-Ohio-5185, ¶ 11 (8th Dist.) (no dispute between the parties that a transfer of funds occurred); *Yoo v. Ahn*, 2018-Ohio-1291, ¶ 13 (8th Dist.) (no dispute between the parties that a transfer of property took place); *Magnum Steel & Trading, L.L.C. v. Roderick Linton Belfance, L.L.P.*, 2015-Ohio-3450, ¶ 4 (9th Dist.) (no disagreement among parties that transfers took place).

{¶ 44} Here, by contrast, a threshold question that the jury had to resolve was whether any transfer occurred *at all*. This distinction is important because the four-year and one-year statute of limitations found in R.C. 1336.09 assumes that a transfer can be identified and did in fact occur. *Accord Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 673 (6th Cir. 2016) (observing, "Ohio precedent weighs in favor of our conclusion that § 1336.09(A)'s one-year discovery period begins to run when a plaintiff discovers or, upon the exercise of reasonable diligence, could have discovered *the transfer* and its fraudulent nature"). (Emphasis added.) When the existence of the transfer itself is contested and hinges on disputed facts,

determining when the transfer could reasonably have been discovered naturally becomes more complicated. This was the exact situation facing the jury when it was tasked with deciding whether the information available to Raida prior to one year before filing her lawsuit would have allowed her to discover both the transfers and their allegedly fraudulent nature. Thus, any analysis of the statute-of-limitations question must keep this distinction in mind.

{¶ 45} Raida testified that above and beyond the original purchase prices, she and Tareq had invested hundreds of thousands of dollars into the Gas Stations between 2011 and 2014 and that the businesses were profitable "money makers." She further testified that Tareq never indicated that the businesses were financially distressed or that he intended to sell them. According to Raida, after she filed the first divorce action, Tareq cut off her access to the businesses' financial records.

{¶ 46} Raida also testified that she was familiar with Qais's financial situation and did not believe he had the financial resources necessary to purchase the Gas Stations. Qais's testimony and other documentary evidence as to his financial situation during the time period of the alleged transfers corroborated Raida's testimony. For instance, Qais testified that from 2001 to 2009, he lived in a one-bedroom apartment while supporting a family of four on his income alone. Evidence in the form of Qais's reported income on his social-security statements, showed that from 2001 through 2008, Qais's taxable wages ranged from $2,835 to $33,583. A 2009 mortgage-loan application introduced at trial additionally showed that Qais had reported income of $2,955 per month and a total of $40,000 in liquid

assets. Qais's 2010 tax return — the year he asserted he had purchased the 871 Rocky River Drive business — reported a total income of $60,431, and Qais's 2011 tax return reported income of $44,388. Lastly, in a 2012 bank application to refinance the mortgage on his home, Qais did not report the 871 Rocky River Drive business as an asset under the section asking him to declare his assets.

{¶ 47} Raida further testified that despite extensive discovery during the divorce proceedings, neither Tareq nor Qais produced stock certificates showing that ownership of either of the businesses had actually been transferred. Additionally, Raida also testified that she had consistently maintained throughout the divorce proceedings that no transfer had occurred and that the businesses remained marital assets.

{¶ 48} Raida presented an expert in the fraudulent-transfer case who testified regarding the formalities required to complete a corporate stock transfer of certificated shares like those related to the 871 Rocky River Drive and the Pearl Road businesses. The expert opined that to complete — or perfect — a transfer of certificated shares in a company, the transferor must take their stock certificates "to the company, with their signature on the back, telling the corporation who they transferred it to." Once the transferor has endorsed the stock certificate and surrendered it to the corporation, the corporation can then issue new stock certificates to the transferee. Here, the expert explained that Tareq never surrendered endorsed stock certificates back to the corporations such that the corporations could issue new stock certificates to Qais.

{¶ 49} The jury was also provided with the domestic relations court's April 20, 2018 judgment entry in the divorce case in which the domestic relations court explained that one of the questions it sought to resolve was whether the gas stations had been transferred. That judgment expressed a high level of skepticism regarding Tareq and Qais's testimony and the documentary evidence they offered purporting to show that the transfers of the businesses took place.

{¶ 50} The domestic relations court repeatedly noted inconsistencies in the brothers' testimony and deficiencies in the documents they presented. The court explained that many of the documents appeared not to have been created or executed at, or near, the time the brothers claimed the transfers occurred. The court also pointed out problems with the purchase agreements for the Pearl Road gas station, including missing essential terms such as the effective date and consideration, conflicting dates, and either untraceable or unexplained payment records.

{¶ 51} The domestic relations court further noted that Tareq frequently repudiated documents during his testimony, including denying signatures on documents produced by his own counsel. Ultimately, the domestic relations court concluded that the testimony of both Tareq and Qais lacked credibility and that the documentary evidence surrounding the alleged transfers was confusing and unreliable.

{¶ 52} Given the domestic relations court's uncertainty regarding the validity of the alleged transfers and its criticism of the supporting evidence, the jury

could reasonably conclude that Raida lacked information confirming that any transfer had actually occurred prior to the issuance of the domestic relations court's judgment. Again, that judgment was issued on April 20, 2018; Raida filed her lawsuit asserting claims for fraudulent transfer within one year of that judgment, on November 28, 2018.

{¶ 53} We acknowledge that other evidence presented at trial could have supported a different jury finding that Raida did discover or had been in a position of reasonably discovering the transfers prior to one year before filing her lawsuit. This evidence includes documents filed with the Ohio Division of Liquor Control between 2011 and 2014 reflecting that Qais owned 871 Rocky River Drive business, Raida's testimony that Tareq told her in November 2014 during an argument over missed support payments that he had "sold the gas station," and Raida's June 19, 2015 filing in the divorce action alleging that Tareq had purportedly transferred the businesses to Qais. However, none of this evidence, as a matter of law, definitively shows that Raida knew of the transfers or reasonably could have discovered them based on the documents and other evidence within her possession within one year of filing suit.

{¶ 54} Indeed, the evidence described above was before this court in the first appeal, where this court reversed the trial court's grant of summary judgment on statute-of-limitations grounds. As noted, this court concluded that questions of material fact existed and remanded the case for a jury determination on when the statute of limitations started to run. *See Allan*, 2022-Ohio-1488, at ¶ 27 (8th Dist.).

This court pointed out with regard to the liquor-control filings that "public filings asserting ownership of a business are evidence that, but not determinative of, a transfer of a business took place." *Id.* at ¶ 34. Additionally, as already explained above, there were reasons for Raida to be distrustful of Tareq's statement that he had "sold the gas station."

{¶ 55} Lastly, regarding Raida's June 19, 2015 pleading containing cross-claims and counterclaims for fraud against Tareq and Qais, we note that that pleading is particularly cautious regarding Raida's knowledge. It repeatedly uses the terms "purportedly" and "purported" when discussing whether Tareq transferred his interests in the Gas Stations to his brother. The use of "purport" and "purportedly" indicates uncertainty and suggests that Raida herself did not know of the transfers, even if she may have had some suspicion.

{¶ 56} Again, this touches on the core question in this case, which is: To have known about or to have reasonably been able to discover that the fraudulent transfer occurred, *a transfer must first have occurred and that transfer must have been fraudulent.* Here, until the domestic relations court stated in the journal entry of divorce that it concluded transfer of both Gas Stations had occurred, it was reasonable for Raida not to have discovered the transfers, given the Tareq's obfuscation and deception.

{¶ 57} The trial court, in granting JNOV, determined that the April 20, 2018 judgment was insufficient evidence of Raida's lack of knowledge because she never

expressly testified that she could not have reasonably discovered the transfers prior to that judgment. However, that is not the correct analysis.

{¶ 58} In Ohio, "a jury has the right to make any logical and immediate inferences from facts which have been established by the evidence." *Hodory v. Federated Dept. Stores, Inc.*, 1979 Ohio App. LEXIS 9764, *8 (1st Dist. Dec. 26, 1979); *see also State v. Knight*, 2016-Ohio-8134, ¶ 26 (10th Dist.) ("A jury can make reasonable inferences from the evidence."). "An inference is a deduction logically following from all of the facts established by the evidence which a jury may but is not required to make." *Hodory* at *8.

{¶ 59} As explained above, evidence was presented to the jury in support of Raida's position that she did not know and could not reasonably have discovered the transfers, and evidence was presented in opposition to Raida's position. We find that, in granting JNOV in favor of Qais and the Gas Stations on statute-of-limitations grounds, the trial court improperly engaged in a manifest-weight-of-the-evidence analysis. Such weighing of evidence is not permitted under Civ.R. 50(B) for granting JNOV. Civ.R. 50(B)(3); *see also Texler*, 81 Ohio St.3d at 679. Under the JNOV standard, the court was required to determine whether the evidence, when construed in the light most favorable to Raida, supported the jury's finding that she did not know and reasonably could not have known of the fraudulent transfer more than one year before November 28, 2018, when she filed suit. *See Environmental Network Corp.*, 2008-Ohio-3833, at ¶ 23. For these reasons, we

sustain the first assignment of error and reverse the trial court's judgment granting JNOV to Qais and the Gas Stations.

## B. Raida's Remaining Assignments of Error

{¶ 60} In light of our resolution of Raida's first assignment of error, we conclude that her second and fourth assignments of error are moot. The second assignment of error challenges the trial court's refusal to instruct the jury on perfection under R.C. 1336.06, which, if applicable, could have extended the statute of limitations for filing her fraudulent-transfer claim if the jury had found that the Gas Station transfers were not yet perfected. The fourth assignment of error asserts that the trial court erred in denying Raida leave to file a motion for partial summary judgment concerning expert testimony related to the issue of perfection. However, because we uphold the jury's determination that Raida filed her fraudulent-transfer claims within one year of when they were or reasonably could have been discovered, and thus within the statute of limitations prescribed by R.C. 1336.09 — we need not address whether the transfers were subject to R.C. 1336.06 regarding assets capable of perfection.

{¶ 61} In her third assignment of error, Raida argues that the trial court erred in denying her motion for JNOV, in which she requested that the court amend the jury's damages verdict forms to include Tareq's name. We note that the trial court did not reach the merits of Raida's motion. Instead, in its April 25, 2025 order, the court denied Raida's motion solely on the ground that Raida had failed to file her claims within the applicable statute of limitations. In light of our reversal of the

trial court's judgment granting JNOV in favor of Qais and Gas Stations on statute-of-limitations grounds, we reverse the trial court's denial of Raida's JNOV motion. In doing so, we note that the statute of limitations is an affirmative defense. *See* Civ.R. 8(C). As such, it is required to be pled by the party asserting the defense in its first responsive pleading, or it is deemed waived. *See Black v. Hicks*, 2020-Ohio-3976, ¶ 93 (8th Dist.). We note that Tareq never filed an answer or other responsive pleading to Raida's complaint or amended complaint alleging fraudulent transfer of the Gas Stations. Therefore, Tareq never asserted the statute of limitations as an affirmative defense. Indeed, this court pointed out this fact in the first appeal. *See Allan*, 2022-Ohio-1488, at ¶ 45 (8th Dist.). Accordingly, the court's stated basis for denying Raida's JNOV as to Tareq is without merit.

{¶ 62} Accordingly, we sustain Raida's third assignment of error and remand to the trial court for further proceedings consistent with this opinion including rendering judgment on Raida's JNOV as to Tareq, and any other outstanding motions that are not mooted and revived by this court's reversal of the trial court's grant of JNOV. *See Armstrong v. Marathon Oil Co.*, 32 Ohio St. 3d 397, 418 (1987) ("[U]pon remand from an appellate court the lower court is required to proceed from the point at which the error occurred.").

## III. CONCLUSION

{¶ 63} For the foregoing reasons, we reverse the decision of the trial court granting JNOV in favor of Qais and the Gas Stations on statute-of-limitations grounds and denying plaintiff-appellant's motion for JNOV as to Tareq, on the same

grounds. We remand the matter to the trial court to enter judgment consistent with the jury's verdict finding Qais and the Gas Stations liable and awarding damages, and to reinstate the court's finding that Tareq is in default. Because the jury was not instructed on and did not make a finding as to damages owed by Tareq, this matter is remanded to the trial court to determine these damages and to enter judgment in favor of Raida reflecting that amount. We also remand to the trial court to rule on the merits of plaintiff-appellant's JNOV concerning amendment of the jury-verdict forms, and to rule on any other outstanding motions that have been revived as a result of this court's reversal on appeal.

{¶ 64} Judgment reversed, and case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR